UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

**NIGHT BOX**
**FILED**

CASE NO. 00-CR-6129, Judge William P. Dimitrouleas

OCT 2 0 2003

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| HVIDE MARINE INCORPORATED, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

## DEFENDANT'S MOTION
## FOR EARLY TERMINATION OF PROBATION

The defendant, Hvide Marine Incorporated1 ("Hvide"),[1] for the reasons set forth in the

accompanying memorandum, pursuant to 18 U.S.C. § 3564(c) and Rule 32.1 of the Federal

Rules of Criminal Procedure, hereby moves this Court for early termination of its probation. The

United States of America ("Government") does not oppose this motion.

---

[1] Hvide Marine Incorporated was renamed Seabulk International, Inc. in March 2001.



## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION FOR EARLY TERMINATION OF PROBATION

On June 6, 2000, Hvide pled guilty to a one-count felony information charging it with willful payment to a labor organization officer, one Walter J. Browne, in violation of 29 U.S.C. §§ 186(a)(2) and (d)(2). On September 22, 2000, this Court sentenced Hvide to five years probation and a fine of $60,000, to be paid in five annual installments of $12,000, and imposed a mandatory special assessment of $400 pursuant to 18 U.S.C. § 3013. A special condition of probation also required Hvide to "implement a program designed to educate its officials and managers of the provisions of the Taft-Hartley Act and conduct constituting a violation of that act." For the reasons set forth below, Hvide requests that this Court exercise the discretion granted to it by 18 U.S.C. § 3564(c) and terminate the remaining portion of its five-year term of probation.

## I. ARGUMENT

Hvide's full compliance with its sentence, including the special conditions of probation, warrants an early termination of its probation, which is due to expire on September 21, 2005. Pursuant to 18 U.S.C. § 3564(c), this Court,

> after considering the factors set forth in section 3553(a) . . . may, pursuant to the provisions of the Federal Rules of Criminal Procedure, terminate a term of probation previously ordered and discharge the defendant . . . at any time after the expiration of one year of probation in the case of a felony, if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice.

Although there are no reported cases in this circuit dealing with this issue, federal courts in other circuits recognize that early termination may be warranted in the case of changed circumstances, such as "exceptionally good behavior." *United States v. Paterno*, No. 99-CR-037, 2002 U.S. Dist. LEXIS 9334, at *4-6 (D.N.J. Apr. 30, 2002); *United States v. Herrera*, No. 94-CR-1021,

1998 U.S. Dist. LEXIS 15348, at *5-6 (S.D.N.Y. Sept. 30, 1998). Whether dealing with probation or supervised release, "the Court must consider the same [Section 3553(a)] factors in deciding whether early termination is warranted." *Paterno*, 2002 U.S. Dist. LEXIS 9334, at *4. Hence, cases granting a defendant's motion for early termination of supervised release are instructive.

Applying language similar to that for probation,[2] federal courts have granted a defendant's motion for early termination of supervised release where such defendant cooperated fully with the terms of the release, or the Government and/or the probation officer did not oppose such motion. In *United States v. Landry*, the district court granted the defendant's motion to terminate supervised release because he was "a model probationer" and because neither the Government nor his probation officer opposed the motion. *United States v. Landry*, No. 96-CR-97, 1999 U.S. Dist. LEXIS 12742, at *3-4 (E.D. La. Aug. 11, 1999). Similarly, in *United States v. Chapman*, the district court terminated defendant's term of supervised release because the defendant had completed his prison term, paid his fine and special assessment and, therefore, "the deterrent value" of the sentence had been "fully realized." *United States v. Chapman*, 827 F. Supp. 369, 371 (E.D. Va. 1993). In both cases, the interests of justice warranted such a determination.

In the instant case, Hvide has served more than the minimum one year term of probation, paid the $60,000 fine ahead of schedule and implemented a Corporate Integrity and Compliance

---

2  *Compare* 18 U.S.C. § 3564(c) *with* 18 U.S.C. § 3583(e)(1), which grant a district court discretion to terminate a term of probation and supervised release, respectively:

> after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

Program comprised of a Code of Business Conduct, Ethics and Conflicts of Interest Policy Guidelines, International Policy Guidelines, and a training seminar for its officers and managers. The training seminars serve to ensure Hvide management's understanding and compliance with the National Labor Relations Act and Hvide's Code of Business Conduct; newly-hired management are required to attend a training seminar within thirty (30) days of the commencement of their employment. Copies of the Code of Business Conduct and Hvide's most recent quarterly report, dated July 23, 2003, describing the training received by Hvide management through the date of such report, are attached hereto as Exhibits 1 and 2, respectively.

Furthermore, Mr. Tony Gagliardi, Hvide's probation officer, has communicated that he is very satisfied with Hvide's compliance efforts and believes Hvide has been very cooperative during the probationary. He does not oppose this motion.

## II. CONCLUSION

The foregoing demonstrates that Hvide's conduct throughout the probationary term has been exemplary and the interests of justice therefore warrant early termination of its term of probation. For the foregoing reasons, Hvide respectfully requests that its term of probation be terminated, effective immediately.

Respectfully submitted,

By: _____

Jane F. Barrett (D.C. Bar #261529)
*Admitted Pro Hac Vice*
BLANK ROME, LLP
600 New Hampshire Avenue, NW
Watergate Building, Suite 600
Washington, D.C. 20037
PHONE: 202/944-3044
FAX: 202/944-3068

4

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent, via telefacsimile and U.S. mail, this the 20 day of October, 2003, to counsel for the plaintiff at the following address of:

Julia Stiller, Esquire
U.S. Department of Justice, Criminal Division
Organized Crime & Racketeering Section
1301 New York Avenue, Suite 700
Washington, D.C. 20005
FAX NO: 202-616-0878

Jane F. Barrett

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

CASE NO. 00-CR-6129, Judge William P. Dimitrouleas

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| HVIDE MARINE INCORPORATED, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

## ORDER GRANTING DEFENDANT'S
## MOTION FOR EARLY TERMINATION OF PROBATION

This cause has come before this Court upon motion of defendant HVIDE MARINE INCORPORATED's motion for early termination and discharge of its five-year term of probation, which is due to expire on September 21, 2005, the Court

ORDERS, ADJUDGES and DECREES that said Motion be, and the same is hereby, GRANTED.

DONE and ORDERED in chambers at the United States Courthouse, 299 E. Broward Boulevard, Room 108, Ft. Lauderdale, Florida, 33301, this ____ day of October, 2003.


_____
JUDGE WILLIAM P. DIMITROULEAS
U.S. DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA


cc:     Julia Stiller, Esquire
        Jane F. Barrett, Esquire

6



# *Code of Business Conduct*
## *&*
# *Policy Guidelines*

ATTACHMENT / EXHIBIT __l__

# MESSAGE TO EMPLOYEES

*Seabulk International's "new beginning" requires us to continue to provide excellent marine support and transportation service to our customers while we meet challenging business objectives, and maintain high ethical standards. All directors, officers, and employees, wherever located, are required to conduct Seabulk International's operations around the world to the highest standards of integrity and in compliance with all applicable laws and regulations.*

*Seabulk International's reputation as a good corporate citizen will depend on everyone's complete compliance with the policies contained in the following pages. Despite the pressures associated with the performance of our jobs, no Seabulk International employee, officer, or director is permitted to violate these policies. Seabulk International's integrity will not be sacrificed for the sake of achieving business results.*



Gerhard E. Kurz
President/Chief Executive Officer



# REVISION TO CODE OF BUSINESS CONDUCT & POLICY GUIDELINES EFFECTIVE  MAY 15, 2003

## ETHICS

(Page 2 Paragraph 4)


Employees should report any suspected violations of this policy to management or the Legal Department, or through the Code of Business Conduct hotline by calling (954) 524-4200, Ext. 822. The Audit Committee of the Board of Directors is responsible for supervising implementation of internal financial controls and accounting. Violations of internal financial controls and accounting procedures may also be directed to the Chairman of the Audit Committee (Tom Moore, (617) 664-1971 or tom_moore@ ssga.com). Violation of conflicts of interest policies may also be directed to the Chairman of the Corporate Governance Committee (Peter Cressy, (202) 682-8870 or pcressy@discus.org).

## INTERNAL CONTROLS

(Page 2 Paragraph 7)

Seabulk International will assure the effectiveness of its internal controls through its audit system. The auditors will perform objective and independent reviews of controls in order to assure management and our shareholders of the effectiveness of such controls for accounting, operational and administrative functions. Seabulk International's employees should always be honest and straightforward with the Company's auditors. No one can ever rightfully authorize an employee to conceal information from management or Seabulk International's internal and external auditors. Further, Seabulk International should seek or maintain the right to audit the books and records, and operational, safety, and environmental operations and records of our partners, agents, consultants and joint ventures. Violations of internal controls should be reported as indicated above under Ethics.

## CONFLICTS OF INTEREST

(Page 3 Paragraph 1)

Whenever possible, employees should raise questions about a  potential conflict of interest with their supervisor, management, or the Legal Department before the conflict is created. Suspected violations of this policy may be reported to management,  the Legal Department, through the Code of Business Conduct hotline  by calling (954) 524-4200, Ext. 822, or to the Chairman of the Corporate Governance Committee as indicated above under Ethics.  Violations of  this policy could result in the imposition of disciplinary action, up to and including discharge from the Company, or a requirement that the employee pay to Seabulk International any proceeds realized from the prohibited activity. Employees should refer to the Seabulk International Ethics and Conflicts of Interest Policy Guidelines section for further discussion or examples related to this policy.

## ETHICS AND CONFLICTS OF INTEREST POLICY GUIDELINES

(Page 13 Paragraph 5)

Employees should report any suspected violations of this policy to their supervisor, the Legal Department, through the Confidential Code of Business Conduct hotline by calling (954) 524-4200, Ext. 822, or to the Chairman of the Corporate Governance Committee as indicated above under Ethics.

### The Restricted Destinations

(Page 18 Paragraph 2)

Countries subject to major trade or other U.S sanctions include:
- Cuba
- Iran
- Iraq
- Libya
- N. Korea
- Serbia
- Sudan
- Syria

## INTERNATIONAL OPERATIONS

(Page 5 Paragraph 3)

### Trade Sanctions:

These U.S. laws and regulations restrict or prohibit trade by U.S. citizens and U.S. companies within certain countries, or with certain foreign governments, or agents of those governments or countries. Countries subject to major trade or economic sanctions include: Iraq, Iran, North Korea, Syria, Cuba, Libya, Sudan and Serbia.



**Employee Acknowledgment**

**Code of Business Conduct
& Policy Guidelines**

I acknowledge that I have received and read the booklet entitled, "Seabulk International Code of Business Conduct & Policy Guidelines." I understand the possible consequences for me if I fail to comply with the requirements that apply to me, as described in this booklet.

**1.** I have not been nor am I now involved in any situation which should be reported to management pursuant to these Guidelines, except such situation or situations as have already been reported by me to management in writing, and

**2.** I have not used and will not use any company facility or resources, including computer hardware and software, communications facilities, and company access to the Internet, or information obtained from the Company in a manner detrimental to the company; nor have I made nor will I make any unauthorized disclosure of confidential or unpublished information, documents, or data obtained through or by connection with the company.

I understand that the Ethics and Conflicts of Interest Policy Guidelines require that I report in advance to my supervisor, or through the Code of Business Conduct hotline, any proposed new commitments on my part which might involve me in a conflict of interest similar to any described in the Guidelines.

**Dealings with U.S. Government**

I hereby acknowledge that I have carefully read and understand the Company's Code of Business Conduct and section "Doing Business with our Government Customers," in particular, as they relate to dealings with the United States Government.

_____

Name (Please print)

_____

Social Security Number (or non-U.S. Passport Number)

_____

Organization or Vessel

_____

Signature

_____

Date

TABLE OF CONTENTS

Ethics..................................................................................................... 2
Internal Controls.................................................................................. 2
Conflicts of Interest............................................................................. 2
Antitrust............................................................................................... 3
Employment Matters............................................................................ 3
Environmental, Health and Safety......................................................... 4
International Operations........................................................................ 4
Intellectual Property Rights of Others..................................................... 4
Political Activities................................................................................ 5
Securities Transactions......................................................................... 5
Investor and Media Relations................................................................ 5
Disclosure And Insider Trading Policies And Procedures.......................... 6
Reporting Information and Obtaining Guidance.......................................10
Responsibilities...................................................................................10
Doing Business With Our Government Customers................................... 11
Ethics & Conflicts of Interest Policy Guidelines......................................12
International Operations Policy Guidelines............................................. 13

## ETHICS

It is the policy of Seabulk International, Inc. (hereafter referred to as "Seabulk International" or "the Company") to comply with all laws applicable to its business. Seabulk International also requires its employees and agents to do what is right, treat people fairly, behave inclusively, accept responsibility and accountability, record all transactions accurately in the Company's books and records, and otherwise conduct Seabulk International's business around the world in a manner that is above reproach. These ethics requirements are non-negotiable.

Seabulk International expects complete compliance with its ethics policy throughout all levels of the Company's operations. It is important that managers set a standard of honest, fair dealing and integrity that subordinates will emulate and respect. The Company will not tolerate employees who achieve results by means of unlawful conduct or unscrupulous behavior.

Seabulk International's reputation for integrity and honest dealing is an important Company asset that no employee, officer or director is authorized to squander for any reason, including business gain for themselves or the Company. Employees should never involve the Company in any business or activity that would personally benefit the employee, or his or her relatives or associates; nor should employees or agents seek to do indirectly what the Company is not permitted to do directly. Seabulk International will impose severe penalties for any unlawful or unscrupulous acts by employees, agents or third parties who are involved in the Company's business, up to and including discharge from the Company, as appropriate.

Employees should report any suspected violations of this policy to management or the Legal Department, or through the Code of Business Conduct hotline by calling (954) 524-4200, Ext. 822. No employee (or third party) will suffer retaliation for reports made in good faith. Employees should refer to the Seabulk International Ethics and Conflicts of Interest Policy Guidelines, page 12 for further discussion and guidance regarding this policy.

## INTERNAL CONTROLS

Seabulk International's system of controls should be designed to demonstrate the Company's commitment to effective risk management, quality control, training, maintenance of accurate books and records, and compliance with the Company's Code of Business Conduct. These internal controls should also ensure Seabulk International's effective operation, legal compliance, and accurate financial reporting. Each employee should create and maintain a system of controls in his or her work that accomplishes the business and operational objectives of Seabulk International. Seabulk International managers are responsible for the effective operation of those controls.

In order to maintain the Company's commitment to operate to the highest ethical standards and maintain the trust of our customers, shareholders and the financial and regulatory community, all transactions should be accurately and timely recorded in Seabulk International's books and records. Transactions should be supported by appropriate documentation, and controls should prevent improper or inaccurate recordkeeping. No off-the-record funds should ever be maintained or created. Compliance with this policy will help ensure that the books and records of Seabulk International are complete and honestly recorded, as is required by U.S. securities laws. Any failure to comply with the internal controls system could result in fines and or criminal penalties for the Company, as well as disciplinary action for employees, up to and including discharge from the Company.

Seabulk International will assure the effectiveness of its internal controls through its audit system. The auditors will perform objective and independent reviews of controls in order to assure management and our shareholders of the effectiveness of such controls for accounting, operational and administrative functions. Seabulk International's employees should always be honest and straightforward with the Company's auditors. No one can ever rightfully authorize an employee to conceal information from management or Seabulk International's internal and external auditors. Further, Seabulk International should seek or maintain the right to audit the books and records, and operational, safety, and environmental operations and records of our partners, agents, consultants and joint ventures.

## CONFLICTS OF INTEREST

Seabulk International requires all directors, officers and employees to avoid any conflict between their personal interests and the interests of the Company during their dealings or in their relationships with the Company's suppliers, contractors, or customers. Every employee should take steps to avoid or terminate all relationships that create a conflict, tension or competition between Seabulk International's interests and the loyalty or interest of the employee.

No confidential information that is derived from any employee's position with Seabulk International should ever be given or made available to third parties without proper authority, even after the employee leaves the Company; nor should such confidential information be used by the employee for his or her personal gain.

Whenever possible, employees should raise questions about a potential conflict of interest with their supervisor, management, or the Legal Department before the conflict is created. Suspected violations of this policy may be reported to management, the Legal Department, or through the Code of Business Conduct hotline by calling (954) 524-4200, Ext. 822. Violations of this policy could result in the imposition of disciplinary action, up to and including discharge from the Company, or a requirement that the employee pay to Seabulk International any proceeds realized from the prohibited activity. Employees should refer to the Seabulk International Ethics and Conflicts of Interest Policy Guidelines, page 12, for further discussion or examples related to this policy.

## ANTITRUST

It is Seabulk International's policy to comply fully with antitrust and competition laws applicable to its operations around the world. In general, these laws prohibit certain anti-competitive agreements between competing entities. Antitrust and competition laws were established to preserve free and open trade for business enterprises.

Examples of anti-competitive conduct include price fixing, agreements between two or more competitors to divide up or allocate customers, agreements between competitors that attempt to allocate or determine markets, or agreements between competitors to boycott or refuse to deal with certain other competitors, customers or suppliers. Because these prohibited agreements do not have to be in writing, employees should ensure that they never engage in conversations or informal activities with competitors that could be misconstrued as being inappropriate or unlawful. Failure to comply with this policy could result in the imposition of severe civil and criminal penalties on the Company and individual, as well as discharge from the Company for individuals.

It can be lawful for competing companies to enter certain cooperative agreements such as a joint venture, alliance, or partial integration of operations, so long as the agreement is properly structured and produces substantial efficiencies with benefits to consumers, and maintains business competitiveness. Due to the complexity of antitrust and competition laws, managers and employees, wherever located, should consult the Legal Department prior to taking any actions with respect to possible cooperative agreements or other activities with competitors involving Seabulk International's companies, operations, or personnel.

Employees should report any possible violation of this policy to management or the Legal Department, or through the Code of Business Conduct hotline by calling (954) 524-4200, Ext. 822. Questions regarding this policy should also be directed to the Legal Department.

## EMPLOYMENT MATTERS

Seabulk International's policy is to treat all employees fairly and to provide equal employment opportunity, in compliance with applicable laws and regulations, to any person who is qualified to perform job requirements regardless of race, color, sex, religion, national origin, citizenship status, disability, veteran status, age or any other basis prohibited by law. Seabulk International is committed to providing a work environment based on fairness and respect for all. Seabulk International will not tolerate discriminatory or harassing conduct of any kind toward or by employees, contractors, suppliers, or customers.

**Equal Employment Opportunity/Nondiscrimination.** The Company will recruit, hire, promote and transfer for all positions without regard to race, color, religion, national origin, socio-economic background, gender, age, physical or mental ability, sexual orientation or veteran status. All employees and applicants will be treated in an equitable, consistent and nondiscriminatory manner on the basis of merit and ability.

**Sexual Harassment.** Harassment is any inappropriate conduct which has the purpose or effect of 1) creating an intimidating, hostile or offensive work environment, 2) unreasonably interfering with an employee's ability to work or the employee's performance, or 3) impacting an individual's work opportunity. Examples of harassment include unwelcome verbal or physical advances, as well as sexually, racially, and otherwise demeaning or discriminatory materials, statements, or remarks. Employees who engage in any act of harassment will be subject to disciplinary action, up to and including discharge from the Company.

Any employee who believes that he or she has been subjected to or has witnessed actions that violate this policy should report the incident to a supervisor or management, or by calling the Code of Business Conduct hotline by calling (954) 524-4200, Ext. 822. Anyone who reports a matter under this policy, in good faith, will not suffer retaliation or reprisal for having done so. Employees who violate Seabulk International's standards under this policy will face disciplinary action, up to and including discharge from the Company.

**Drug-free Workplace.** The Company is committed to maintaining a drug-free work environment. It is Company policy to prohibit the unlawful use, possession, disposition, distribution or manufacture of a "controlled substance" on Company premises or at any customer site. Arriving at the work place or any customer site under the influence of a controlled substance is also prohibited. Similarly, the use, sale, purchase, transfer or possession of alcohol in a Company facility or on Company premises or at a customer site is prohibited except during Company-supervised occasions. Being

under the influence of alcohol while performing Company business or job-related duties or while in a Company facility or on Company premises, or while operating Company equipment or vehicles, is also prohibited.

## ENVIRONMENTAL, HEALTH AND SAFETY

Seabulk International's policy is to conduct its worldwide operations in a manner that protects the environment, health and safety of employees, customers and the communities in which we operate. The Company is committed to cost-effective improvement of our environmental, health and safety (EHS) performance around the world and throughout our operations.

The Company's policy is to:
- comply with all applicable environmental, health and safety laws and regulations;
- increase awareness of and respect for EHS performance by our employees, contractors and customers;
- take steps to prevent incidents and control emissions and wastes to below harmful levels; also work to assure that our operations and facilities are conducted and maintained to achieve that end;
- respond quickly and effectively to incidents resulting from our operations, and cooperate with relevant government regulators and agencies regarding such incidents;
- provide appropriate training and engage in appropriate operating practices so that we are prepared to respond properly to emergencies;
- improve our EHS performance through effective monitoring and management systems;
- contribute to the industry's EHS performance through public communication and sharing of our experience with others;
- appropriately monitor our operations in order to measure EHS progress and ensure compliance with this policy;
- reward and recognize exceptional EHS performance.

## INTERNATIONAL OPERATIONS

Seabulk International's policy on International Operations requires all employees and agents to comply in every respect with applicable laws and to conduct the Company's business, wherever located, to the highest ethical standards.

International transactions, operations, and activities will always be subject to the applicable laws of those of the countries where the transaction or activity occurs. With respect to the international operations of U.S. companies or the activities of U.S. citizens, residents and nationals, wherever located, the applicable laws will include U.S. laws. Due to the complexity of the laws applicable to the Company's international operations, employees should seek guidance from the Legal Department whenever issues arise in connection with an employee's work or the Company's operations with respect to the following areas:

> **Trade Sanctions:** These U.S. laws and regulations restrict or prohibit trade by U.S. citizens and U.S. companies within certain countries, or with certain foreign governments, or agents of those governments or countries. Countries subject to major trade or economic sanctions include: Serbia, Iraq, Iran, North Korea, Syria, Cuba, Libya, Sudan, Taliban (Afghanistan) and UNITA-controlled parts of Angola.

> **Export Controls:** These U.S. laws and regulations restrict exports from the U.S. (and re-exportation from other countries) of certain software, technology, chemical products, U.S. crude oil, and certain products made outside of the U.S. using U.S. technology. U.S. laws also prohibit trading with companies in countries that are linked to proliferation of biological, chemical and nuclear weapons or missiles.

> **Foreign Corrupt Practices Act:** This U.S. law imposes severe criminal penalties on those covered persons and companies who offer, pay or promise to pay a bribe (or give anything of value) to a foreign government official, foreign political party, party official or candidate, or official of a public international organization in order to obtain or retain business, or secure any improper advantage. It also requires U.S. companies to maintain accurate books and records, and to have adequate financial controls.

> **Antiboycott Laws:** These U.S. laws prohibit actions by U.S. persons and companies that constitute cooperation with certain boycotts of other countries. For example, cooperating with the Arab League's boycott of Israel would violate U.S. antiboycott laws and subject the offender to civil and criminal penalties.

Employees should refer to Seabulk International's International Operations Policy Guidelines, page 13, for additional information about this policy and the four specific areas described above.

## INTELLECTUAL PROPERTY RIGHTS OF OTHER

Seabulk International's policy is to respect and recognize the legal rights of others, and protect our own rights with respect to proprietary, intangible assets such as patents, trademarks, copyrights, trade secrets or other proprietary information.

4

Seabulk International employees are required to protect confidential Company information, as well as information which the Company obtains from a third party under a contractual obligation of confidentiality. Seabulk International will take all reasonable and appropriate steps to ensure that its proprietary assets are not misappropriated or infringed upon by others.

Any employee who has questions about this policy or suspects that someone is violating the policy should contact his or her supervisor, management, or the Legal Department.

## POLITICAL ACTIVITIES

It is the policy of Seabulk International that no Company resources or facilities may be used to make political contributions to political candidates or political parties, or for the solicitation of employee political contributions to any candidate anywhere, except as permitted by applicable law and as authorized by the Seabulk International Board of Directors.

Seabulk International will communicate its view on public issues that impact the Company. Employees, in their private capacity, are encouraged to vote, contribute personal funds to the candidates of their choice, serve in civic bodies, and become informed about the political process. It is prohibited for any Seabulk International funds to be used to reimburse or compensate an employee who makes a personal contribution of time or money in connection with any political process or activity.

Seabulk International employees should never give, offer or promise a bribe, gratuity, kickback or other such thing of value to a
public official in the U.S. government or in any country in which the Company operates.

Employees who violate this policy are subject to disciplinary action, up to and including discharge from the Company. Questions regarding this policy should be directed to the Legal Department.

## SECURITIES TRANSACTIONS

Seabulk International's policy on securities transactions prohibits trading in securities on the basis of an employee's access (through his or her work with the Company) to material, non-public information. It also prohibits employees from providing such material, non-public information to others who then trade securities on the basis of that information. Employees who acquire material information about the Company which has not yet been made public must never disclose that information to third parties, including close family members, security analysts, brokers or others who might trade in Seabulk International securities or those of other companies.

Employees are also prohibited from buying or selling the securities of another company where the non-public information about Seabulk International is reasonably expected to impact the market value of the other company's securities.

Employees who violate this policy are subject to severe penalties, including fines and imprisonment, as well as disciplinary action up to and including discharge from the Company. Employees should seek guidance with regard to any questions or suspected violations of this policy from the Legal Department.

## INVESTOR AND MEDIA RELATIONS

The purpose of Seabulk International's policy concerning investor and media relations is to ensure that all communications with the investment community and the media comply with laws governing public-company disclosure. Our policy is that all such
communications will be accurate and complete, and that no material information will be disclosed to any member of the investment
community or media unless it is first publicly disclosed. For purposes of this policy, the investment community includes:
- securities broker-dealers;
- security analysts;
- investment advisers and institutional investment managers;
- mutual funds and hedge funds; and
- persons holding Seabulk International securities or considering investing in them.

The media include:
- newspapers, magazines, and other print publications;
- television and radio;
- investment newsletters;
- industry publications; and
- investment and industry web sites.

This policy does not preclude communication of material nonpublic information to our accountants and attorneys, ratings agencies, and others having a duty of confidentiality to the company.

Only authorized persons are permitted to communicate with the investment community and the media. These are the

5

company's:
- Chief Executive Officer;
- Investor Relations Officer;
- Chief Financial Officer; and

Any other officer or agent of the company authorized by the Chief Executive Officer.

Any officer or employee who becomes aware that an inaccurate communication or disclosure has been made by the company or that material information has been disclosed without first having been publicly disclosed should immediately notify the company's Chief Executive Officer or Legal Department.

## DISCLOSURE AND INSIDER
## TRADING POLICIES AND PROCEDURES

### PART I.    Guidelines for Disclosure of Information to Investors, Securities Market Professionals and the Media

These Guidelines set forth the standards of conduct for Company employees and members of the Company's Board of Directors with regard to the disclosure of information to: (1) securities market professionals such as analysts, broker-dealers, institutional investment managers, investment companies and hedge funds, (2) investors, (3) media and (4) other individuals or entities outside the Company. These Guidelines have specifically been issued to comply with Regulation FD promulgated by the Securities and Exchange Commission ("SEC").

### Policy Statement

As a public company, Seabulk International (the "Company") is committed to timely, consistent, fair and credible dissemination of information to the public, in keeping with legal and regulatory requirements, to enable orderly behavior in the capital markets. The Company regularly prepares reports for filing with the SEC and dissemination to the public. Our management is on occasion asked, nevertheless, to provide additional business and financial information. It is generally the policy of the Company not to release material, non-public information to third parties except under limited special circumstances, such as communications made pursuant to signed confidentiality agreements or communications made to an entity engaged by the Company who owes the Company a duty of trust or confidence such as an attorney, investment banker, accountant or representative of a bank or other loan participant entitled to information pursuant to the Company's credit agreement. However, should the Company release material, non-public information to an investor or securities market professional, then it is the Company's policy, pursuant to Regulation FD, to immediately make public disclosure of such information.

### Authorized Spokespersons

To ensure the accuracy and proper disclosure of information, it is the Company's policy to limit the individuals responding to requests for information to authorized spokespersons. Employees who are not authorized spokespersons shall refer all calls from shareholders/bondholders, securities market professionals, banks and media to persons authorized to speak on behalf of the Company. Any request for such business or financial information should be directed to the following authorized spokespersons: (1) requests from shareholders/bondholders or other members of the investment community should be directed to the Senior Vice President of Investor Relations, the CFO, or the Treasurer; (2) requests from members of the media should be forwarded to the Senior Vice President of Corporate Communications or the Director of Corporate Communications; (3) requests from commercial banks and other creditors should be directed to the CFO or the Treasurer. The spokespersons shall inform and coordinate disclosures with the President and CEO and, as to legal and regulatory issues, the General Counsel. The President/CEO may also act as the Company's spokesperson on any of these matters, but shall keep the other spokespersons informed and coordinated.

### Disclosure Principles

The principles set forth below are designed to permit appropriate disclosure of corporate news to securities market professionals, reporters, and other responsible people, while avoiding prohibited selective disclosure and potential trading abuses. All Company employees and members of the Company's management and Board of Directors are expected to follow the disclosure procedures set forth below in Part I, as well as the Company's insider trading guidelines entitled "Insider Trading Policy", which is Part II. Any questions about compliance with these procedures and guidelines should be addressed to the office of the Company's General Counsel.
- Sensitive information should be disseminated within the Company only to those individuals who need to know it.

- Public disclosure of financial projections prepared for internal use is generally prohibited, given the inherent unreliability of such information and the possible need to update it. Statements about other future events, uncertain to occur, would raise similar problems. Accordingly, briefing of a securities market professional, reporter or other "outsider" should generally be limited to historical financial data and completed business transactions. "Forecasts," financial or otherwise, may only be made as part of a coordinated and scheduled disclosure and press release, after consultation and agreement with the President/CEO, and with appropriate disclaimers for foward looking statements.

6

- Unless the Company is the source of a "market rumor," there is generally no duty to respond to the rumor. When asked to respond to a "market rumor," management should refer the matter to the Senior Vice President of Corporate Communications who should respond with a firm "it is the Company's policy not to respond to market rumors"; this should be done consistently, without regard to whether the particular rumor may be good or bad, true or false.

- Special rules apply to disclosures involving "tender offers." Do not respond to any inquiry for information without the prior approval of the General Counsel or CFO during such period.

- It is the Company's policy not to edit or revise written work produced by others. The Company cannot assume responsibility for the contents of reports of securities analysts or other third parties concerning the Company. Accordingly, none of our employees, management or members of the Company's Board of Directors should review "drafts" of reports produced by others concerning the Company, provided, however, that persons designated as authorized spokespersons may review a draft report for misstatements of history or fact.

## Disclosure Procedures

From time to time inquiries are made by investors or investment banks, commercial banks, and other financial institutions with an interest in ferreting out facts relevant to the value of the Company's securities.

- Refer the inquiry to the appropriate spokesperson, as set forth above.

- The spokesperson, where practicable, should make and keep notes of conversations with the individual seeking Company information, especially as it relates to any information that may be conveyed.

- The spokesperson should satisfy himself that he would not be providing the inquirer with information that he could not provide under these guidelines to any other qualified inquirer.

- Never release material, non-public information to any third party unless such release is approved by the Company's CFO or General Counsel, and either (i) the communication is made pursuant to a signed confidentiality agreement or (ii) the communication is made to a person who owes the Company a duty of trust or confidence such as the Company's attorney, investment banker, accountant, or representative of a bank or other loan participant requesting information pursuant to the Company's credit agreement.

  For the purposes of these guidelines, information is material if there is a substantial likelihood that an investor would consider it important in making an investment decision. Examples of information that will frequently be regarded as material are information concerning: (1) earnings, (2) mergers, acquisitions, tender offers, joint ventures, or significant changes in assets, (3) major new contracts or developments regarding major customers (e.g., the acquisition or loss of a key contract), (4) changes in control or in management, (5) changes in auditors or auditor notification that the Company may no longer rely on the auditor's audit report, (6) events regarding the Company's securities and loans (e.g., defaults on senior securities or loans, calls of securities for redemption, repurchase plans, stock splits, changes in rights of security holders, or public or private sales of additional securities) and (7) bankruptcies or receiverships. Information is non-public if it has not been disseminated in a manner making it available to investors generally.

- Should a spokesperson or senior official of the Company (i.e. a Company senior officer or a member of the Board of Directors) disclose material, non-public information during any communication with an investor or securities market professional, then the Company's General Counsel or CFO should be immediately notified and immediate public disclosure should be made.

## Meetings With The Investment Community

From time to time meetings or press conferences may be scheduled among the Company's senior executives, outside financial analysts, security holders and/or other securities market professionals in order to provide a forum for distribution to the investing public of non-public information relating to recent corporate developments or the Company's performance since the last quarter earnings release. If such non-public information is deemed to be material, and it is likely to be material, then the Company will disclose, at least concurrently, such information to the public in a press release.

Additionally, if the Company makes a planned disclosure of material information through a press release, such as a scheduled earnings release, and decides to hold a conference call in connection with the press release, the following procedures should be used:

- First, issue a press release, distributed through regular channels, containing the information;

- Second, provide adequate notice, by a press release and/or website posting, of a scheduled conference call, giving investors both the time and date of the conference call, and instructions on how to access the call;

- Third, hold the conference call in an open manner, permitting investors and the media to listen in; and

- Fourth, make available, for a few days following the conference call, a replay of the call that may be accessed by investors.

**Dealing With The Agent Bank And Participants Under The Company's Bank Credit Agreement(s)**
The Company's relationship with its Agent Bank or loan participants is governed by the credit agreement pursuant to which the Company has agreed to provide certain information to the bank and loan participants, subject to such information being kept confidential. All dealings with the Agent Bank and loan participants should be directed by the office of the Company's CFO or Treasurer.

The "Disclosure Principles" stated above apply to all dealings with the Agent Bank and loan participants. It is suggested that where material, non-public information is given to the Agent Bank or loan participants pursuant to the credit agreement, that a statement, in substantially the form indicated immediately below*, be included with the information delivered to the Agent Bank and loan participants.

> * "The information contained herein has not been made public and is furnished to certain key executives and lenders on a confidential basis for their use. It should be used only for that purpose and not divulged to any other persons. Trading in Company securities after receipt of this information until it has been made public, or its improper disclosure to others, could result in violations of federal securities laws."

**Dealing With The Press**
Statements made to the press, whether written or oral, which are disseminated promptly and simultaneously to all elements of the investing public, should not result in "insider trader" violations. Liability may be incurred, nevertheless, with statements emanating from the Company concerning "future events" such as financial results for periods not yet ended. Therefore, when dealing with the press, take care to observe the Disclosure Principles stated above, particularly the limitation on disclosure of forward-looking information. In addition:

- Inquiries made on behalf of a "wire service" (such as Dow Jones, AP or Reuters) or other national or international institution should be directed at once to the Senior Vice President of Corporate Communications.

All requests for financial data should be answered by or under the direction of the CFO or Treasurer.

## PART II.    Insider Trading Policy

This policy statement, adopted by the Board of Directors, applies to all directors, officers and employees of Seabulk International Incorporated and its subsidiaries and affiliates (the "Company"). <u>Directors and officers of the Company are herein referred to as "Insiders."</u>

Insiders and employees of the Company may come into possession of confidential and highly sensitive information concerning the Company, our customers, suppliers or other companies with which we have contractual relationships or may be negotiating transactions. Much of this information has potential for affecting the market price of securities issued by the Company and/or such other companies. Trading in the securities of the Company or other companies based on non-public, or "inside" information, or providing such information to persons not employed by the Company who thereafter trade in such securities, may constitute insider trading.

Both employees and their employer may be liable for substantial civil penalties for insider-trading violations. An employer may be liable for civil penalties if the employer both (i) knew or recklessly disregarded the fact that an employee was likely to engage in a violation, and (ii) failed to take appropriate steps to prevent that violation before it occurred. Employers may be subject to substantial civil and criminal penalties for insider-trading violations committed by employees even if only a small gain (or loss avoided) is involved. Penalties may be more severe for violations involving large gains. The Securities and Exchange Commission and several U.S. Attorneys' offices have vigorously enforced the insider-trading laws against both individuals and companies.

It is the Company's policy not only to prohibit insider trading, but also to avoid the appearance of insider trading, which can damage the integrity and reputation of the Company. The Company is, therefore, providing guidance to Insiders and employees concerning the propriety of various personal transactions and establishing procedures to ensure that neither the Company nor its employees or Insiders violate insider trading laws.

## SUMMARY OF THE LAW

*Insider Trading Is Illegal.* The federal securities laws prohibit the purchase or sale of a security when the person trading in that security possesses material non-public information concerning the company that issued the security, acquired in the course of employment or obtained or used in breach of a duty to maintain the information in confidence. Communication of material non-public information concerning the Company or any other public company to a third party who trades in the securities of the Company while in possession of such information may also violate the law.

*What is a security?* A security is a stock, bond, note, convertible debenture, warrant, or other document that represents a share in a company or a debt owed by a company.

*What is Material Information?* "Material" information includes any information, positive or negative, that might be considered significant by an investor in deciding whether to buy, sell or retain securities. Common examples of information that generally will be regarded as material are: news of a pending or proposed merger or acquisition; news of a significant sale of assets or the disposition of a subsidiary; earnings and operating results; changes in dividend policies; declaration of a stock split; the offering of additional securities; changes in management; significant new services; a major lawsuit; an important financial transaction; impending bankruptcy; or financial liquidity problems. (Also see Part I).

Note, however, that Insiders and employees routinely use confidential, but immaterial, information to fulfill their duties at the Company that may never be disclosed to the public. Possession of this type of information does not prevent trading by Insiders or employees. Examples of such information include most marketing, operating and contracting information.

*What is Non-public Information?* "Non-public" information is information that is not available to the public. Information is regarded as available to the public only when it has been released through appropriate channels, as by a press release, SEC filing, or a statement from one of the Company's senior management to one or more widely distributed news wire services and news publications, and sufficient time has elapsed to permit the trading markets to absorb and evaluate the information. (Also see Part I). <u>Information generally will be regarded as "public" two business days after it has been broadly released.</u>

## STATEMENT OF COMPANY POLICY

*The following policies apply to <u>trading by Insiders and employees</u> in the securities of the Company and other public companies:*

*Insiders and Employees May Not Trade While in Possession of Material Non-public Information.* Insiders and employees may not buy or sell securities while in possession of material non-public information relating to the Company or certain other public companies, regardless of how such information was obtained. Examples of other public companies in whose securities trading may be restricted include customers, suppliers, competitors, and companies with which the Company may be negotiating a business transaction.

*Insiders and Employees May Not Discuss Material Non-public Information with Others.* Insiders and employees may not discuss material non-public information with anyone except as may be required in the performance of corporate duties. (Also see Part I).

*Insiders and Employees May Trade Only After Public Dissemination of Information.* After the information has been publicly released, the Insider or employee must allow at least two business days to elapse before trading to allow for public dissemination and evaluation of the information.

*The following policies apply only to trading by Insiders in the securities of the Company only:*

*Short-Term Trading Prohibited.* Short-term trading in securities issued by the Company is prohibited. Short-term trading includes the purchase and subsequent sale, or sale and subsequent purchase, of the Company's securities within any period of less than six months. This restriction is important in light of the provisions of Section 16 of the Securities and Exchange Act of 1934. Section 16 provides, among other things, that any profit realized by Insiders from a purchase and sale or sale and purchase of the Company's equity securities within any period of less than six months shall be recoverable by the Company.

*Trading Restricted During Blackout Periods.* Whenever there is material non-public information concerning the Company, the Senior Vice President of Corporate Communications and the General Counsel are empowered to restrict trading in its securities. For example, a trading blackout may be declared in special situations involving the Company, such as an undisclosed pending merger agreement or material acquisition.

*Other Prohibited Activities.* Insiders must not engage in any of the following activities with respect to the Company's securities, whether or not in possession of material non-public information:

(1)    Trading during any period commencing the first business day following the end of any fiscal quarter or year and concluding three business days after the announcement of financial results for the fiscal quarter or year;
(2)    Purchasing securities on margin;
(3)    Selling securities "short"; or
(4)    Buying or selling put or call options.

## CLEARANCE PROCEDURES

Prior to effecting a purchase or sale of any of the Company's securities, including the purchase of the Company's securities through the exercise of stock options, all Insiders must contact the Senior Vice President of Corporate Communications or the General Counsel to obtain clearance.

## REPORTING INFORMATION AND OBTAINING GUIDANCE

Employees may raise questions about these policies with a supervisor or the Legal Department. Any employee who has information that gives reason to believe someone has acted, or will act, illegally should promptly report that information to a supervisor, higher management, or the Legal Department.
Alternatively, any employee may call Seabulk International's confidential Code of Business Conduct hotline 24 hours a day at (954) 524-4200, Ext. 822. Seabulk International policy prohibits retaliation against employees for reporting information or raising questions in good faith about possible violations of law or Company policy.

## RESPONSIBILITIES

**Management.** Under this Code of Business Conduct, the Company's corporate management is responsible for:
•    maintaining and supporting the Ethics Advisor who shall report directly to the Board of Directors;
•    maintaining and supporting an Ethics Hotline to be used by employees to report suspected violations of the Code of Business Conduct.
•    maintaining, distributing and updating annually the Seabulk International Code of Business Conduct and related Policy Guidelines;
•    providing all employees with clear guidelines on matters of everyday business conduct;
•    making available to all employees periodic educational and training programs to ensure that all employees have a sound awareness and understanding of the Code of Business Conduct, Policy Guidelines and related matters;
•    providing continuing counsel on Company rules and regulations to all employees;
•    maintaining working conditions at all locations which support employee responsibilities under this Code; and
•    enforcing compliance with the Code.

**Managers and Supervisors.** All managers and supervisors have a special responsibility for implementing this Code of Business Conduct and will be evaluated for:
•    ensuring that all current and new employees under their supervision receive a copy of each of the Code of Business Conduct & Policy Guidelines and the Employee Acknowledgement and are regularly trained and evaluated in its meaning and application;
•    reviewing employees' compliance with the Code by use of a checklist and random sampling;
•    stressing to all employees in word and deed the importance for continuing commitment to the Code;
•    demonstrating their own commitment by conducting themselves and managing their departments and the activities of all employees under their supervision in accordance with the Code;
•    maintaining a workplace environment that encourages frank and open communication;
•    assuring that the workplace is free of the fear of reprisal for adherence to the Code.

**All Employees.** Under this Code of Business Conduct, all employees are responsible for:
•    reviewing and acknowledging awareness and understanding of the Code;
•    adhering to the Code and the policies, procedures, and practices that support them;
•    contributing to a workplace environment that is conducive to the maintenance of the Code in daily business activities;
•    seeking help from supervisors or the Ethics Advisor when the proper course of action is unclear or unknown;
•    counseling fellow employees when it appears they may be in danger of violating the Code or Company policies and procedures;
•    reporting suspected violations of the Code to their supervisor or the Ethics Advisor.

**Ethics Advisor.** Under this Code of Business Conduct, the Ethics Advisor is responsible for:
•    quick response to all concerns expressed by employees;
•    maintaining the confidentiality of the "Code of Business Conduct Hotline" users to the highest level possible;
•    thorough investigation of all allegations, issues and concerns;
•    maintaining frequent and open communication with all callers/writers through closure of the case;

- fair and equitable determination in the resolution of all cases;
- overseeing the update of all components of the Code of Business Conduct and coordinating all recurring training relating thereto.

## DOING BUSINESS WITH
## OUR GOVERNMENT CUSTOMERS

As a customer, the United States Government considers certain sales and marketing practices to be improper. Examples of such conduct include:

- offering anything of value to influence a government official's decision regarding a procurement or a contract,
- accepting anything of value as an inducement to do business with or treat favorably a subcontractor, vendor, supplier or consultant,
- improperly obtaining government procurement plans, other competitively-sensitive data, or classified information.

We must strictly avoid any conduct that could be considered a bribe or a kickback, and must not solicit or accept from any party information that is considered by the Government to be source selection information. Under no circumstances may you give anything of value to the employees or representatives of any U.S. Government customer or potential customer for the purpose of obtaining a contract or influencing a decision in performing a contract. Such conduct can result in termination of employment and/or criminal penalties for both the Company and the individual(s) involved.

**Gifts and Entertainment.** While it is a common and accepted business practice to offer seasonal gifts to preferred customers and entertain customers as part of regular business meetings, such conduct is not permitted when the customer is the United States Government. Employees may not provide to U.S. Government customers or members of their families, either payments, gifts or gratuities, or pay for any meal, refreshment, entertainment, travel, or lodging expenses, irrespective of whether or not it is intended to influence a decision.

**Promotional Items and Necessary Services.** This prohibition should not be interpreted to include items that are clearly promotional in nature, provided they are nominal in value and appropriate to the business relationship. It also does not include those instances where it is not practical for a U.S. Government employee to obtain his/her own meals, such as on board a Seabulk International vessel while it is under way.

**Family and Personal Relationships.** Seabulk International understands that family and other personal relationships may exist between its employees and U.S. Government employees. In such relationships, the exchange of personal gifts between family and friends are not necessarily ethics violations. However, if the relative or friend has decision-making authority over any aspect of Seabulk International business, then such relationships should be disclosed to the Ethics Advisor so that appropriate measures can be taken to remove or mitigate the conflict.

**Company Proposals.** We must do the very best we can to satisfy our customer's requirements by submitting realistic proposals on performance, cost, and schedule. All information we provide about Seabulk International's products or services must be current and accurate. In contracts where Seabulk International submits to the United States Government cost and pricing data, only costs which are allowable, reasonable, and allocable to a contract should be charged to the customer consistent with applicable Federal Acquisition Regulations as communicated by the Company.

**Invoices.** All invoices submitted to the customer for payment must be reviewed carefully for accuracy. Seabulk International is responsible for ensuring that costs are properly classified and allocated in compliance with pertinent U.S. Government cost principles and contract clauses. If you are responsible for billing, you must ensure that all billings to the customer accurately reflect the actual amount due for any product or service and are properly screened for unallowable or otherwise nonbillable costs or fees. Submission of unallowed costs could lead to liability for the Company and the employee who approves the charges.

**Recording Time.** If you are required to complete time cards, you must do so in a complete, accurate, and timely manner. Intentional labor mis-charging or other falsification of time worked is fraud and is grounds for disciplinary action, including immediate termination of employment. It is also a violation of federal law and could result in criminal penalties. Any questions regarding time reporting should be addressed to your immediate supervisor. If you are not satisfied that your supervisor is accurately reporting your time, you are promptly to report the matter through the Code of Business Conduct hotline at (954) 524-4200, Ext. 822.

**Expense Reports.** Business expenses incurred while conducting company business must be promptly and accurately documented through Seabulk International expense reports. To be reimbursable, expenses must be supported by receipts. When filing expense reports, employees must distinguish between business travel expenses and business entertainment expenses. The United States Government has special rules and regulations governing the types of expenses for which it may be charged. If your expenses may or will be charged to a U.S. Government contract, you should consult with your supervisor concerning those costs which may not be allowable and your expense report should indicate which expenses are, or might be, unallowable.

**Hiring Current or Former Government Employees.** There are a number of statutes and regulations governing the recruitment of current and former U.S. Government military and civilian employees and their use as consultants to the Company. There are also special restrictions on the utilization of consultants to obtain government business. Before you discuss possible employment with, make an offer to, or hire as an employee or a consultant, any current or former military or civilian government employee, you must obtain prior written approval from the Legal Department.

**Proprietary and Source Selection Information.** Employees shall not obtain, or ask to obtain, directly or indirectly, from any customer or other third parties, any information believed to contain proprietary or source selection information. Examples include information contained in a competitor's bid or proposal, its cost or pricing data, or other information submitted to the customer and designated as proprietary.

Before confidential or proprietary information is accepted from or released to any customers, consultants, or others, a written agreement regarding restrictions on use or disclosure should be signed by both parties after appropriate review and approval by Seabulk International's Legal Department.

"Source selection information" means any material, which, if disclosed to a competing contractor, would jeopardize the integrity of a procurement. Source selection information includes any material marked with restrictive legends such as: "Source Selection Information - See FAR 3.104;" "Not for Release to Contractors;" "Government Use Only;" and "For Official Use Only".

**Selecting Suppliers and Vendors**

**Competition in Contracting.** Whenever possible, Seabulk International shall procure materials, supplies, equipment, consulting, and other services from qualified suppliers at the lowest cost, consistent with the desired quality, performance and delivery schedule. We will always employ the highest ethical business practices in source selection, negotiation, determination of awards, and the administration of all purchasing activities. Whenever feasible, we will encourage, establish, and maintain competition and will, at all times, comply with applicable government regulations and contractual requirements, as well as Company policies and procedures.

**Debarred, Suspended or Ineligible Persons and Businesses.** It is the Company's policy not to do business with or enter into negotiations to do business with any person or company that has been suspended or debarred from doing business with the United States Government. Before any employee enters into business discussions with a subcontractor, vendor, supplier or consultant, he or she shall ascertain from the Purchasing Department that the person or entity is not included on the list of debarred, suspended or ineligible contractors maintained by the United States Government.

## ETHICS AND CONFLICTS OF INTEREST POLICY GUIDELINES

Seabulk International employees have a duty to avoid financial or other business relationships that might be adverse to the interests of Seabulk International, create the appearance of (or have the potential of producing) conflicting loyalties or interests, or interfere with effective job performance.

Seabulk International requires its employees to conduct business activities to the highest ethical standards and take action to avoid personal and business situations that create a conflict, competition, or tension between Seabulk International's interests and the interest or loyalty of the employee.

Below are some examples of conduct covered by this policy that could create potential conflicts of interest:

- Employees should not own a material interest in, or act as an officer, director, employee or consultant on behalf of, the business of any Seabulk International supplier, contractor, or customer. Employees who wish to engage in activities covered by this policy without adversely affecting the company's interests must report the proposed activity to their supervisor or management. The supervisor should, in turn, review the matter with the Legal Department to determine if the activity may be accomplished without harming Seabulk International's interests, or interfering with the employee's effective job performance.

- Seabulk International discourages gifts, trips, entertainment, loans or other favors from contractors, suppliers or customers to employees. However, small business gifts of an advertising nature or reasonable business entertainment in the course of Seabulk International's business may be accepted where the value of the gift or business activity does not exceed the greater of 1% of an employee's monthly base salary or $50. If the gift or business entertainment exceeds the limits of this policy, the employee or officer should report the matter to his or her supervisor, who, in unclear cases, should review the matter with the Legal Department.

- Employees should not use information or Seabulk International facilities and assets in a manner that will be detrimental to Seabulk International. An employee should not use for his or her own benefit information developed through Seabulk International research activities, or disclose confidential or unpublished information obtained through an employee's connection with Seabulk International. Nor should employees use Seabulk

International assets or facilities for their personal benefit or for non-company business or activities. Seabulk International assets or facilities referred to in this policy include computer hardware and software, communications facilities and company-provided access to the Internet.

- Employees should not seek to own or acquire property or interests through the use of confidential or unpublished company information. Employees also should not attempt to own an interest or property, where the value of the interest or property is likely to be influenced by Seabulk International action or the recommendation of a Seabulk International officer or employee. If an employee is unsure whether a property or interest is subject to the above policy, the matter should be reviewed with the employee's supervisor or management.

- Business opportunities, which are reasonably anticipated to be of interest to Seabulk International, should not be converted by an employee to his or her own benefit, nor diverted by that employee for the benefit of others. In unclear cases, an employee should review the proposed activity with his or her supervisor, who, where appropriate, may seek guidance from the Legal Department.

- Employees may not own (directly or indirectly) a material interest in the enterprise of a Seabulk International competitor. In addition, no Seabulk International employee should act as a director, officer, partner, consultant, employee or agent of any enterprise in competition with Seabulk International.

Violations of the policy could result in disciplinary action, up to and including discharge from the company, or a requirement that the employee pay to Seabulk International any profit realized as a result of the inappropriate activity.

Employees should report any suspected violations of this policy to their supervisor or the Legal Department, or through the confidential Code of Business Conduct hotline by calling (954) 524-4200, Ext. 822.

## INTERNATIONAL OPERATIONS POLICY GUIDELINES

### Purpose
These International Operations Policy Guidelines were created to help ensure that all Seabulk International employees and representatives, as well as employees and representatives of Seabulk International subsidiaries, understand and comply with the Company's Policy on International Operations, (see page 4), as well as the laws applicable to the conduct of the international operations of Seabulk International and its subsidiaries. These guidelines are intended to provide a more detailed explanation of the requirements and procedures to be followed in the key areas covered by the International Operations Policy:

- The U.S. Foreign Corrupt Practices Act (the "FCPA");
- U.S. Trade Sanctions;
- Export Control requirements; and
- U.S. Antiboycott Law requirements.

Due to the complexity of these laws and the severity of the penalties for a violation of these laws by individuals or the Company, employees should seek further guidance from the Legal Department before proceeding with a transaction or activity whenever the employee has reason to believe that such transaction or activity raises issues covered by these International Operations Policy Guidelines.

### I.      U.S. Foreign Corrupt Practices Act Guidelines

#### A.      Seabulk International Policy On Payments to Government Officials

It is Seabulk International's policy to comply with all applicable laws and regulations, including the U.S. Foreign Corrupt Practices Act and related international anti-bribery initiatives, and to conduct its world-wide operations to the highest ethical standards. No employee or agent should ever make or offer an improper payment or benefit to a government official in order to obtain or retain business for Seabulk International operations, activities or projects, or in order to secure any improper advantage for the Company. Suspected violations of this policy should be reported to Seabulk International Management or the Legal Department. Violations of this policy could result in severe disciplinary action, up to and including termination from the Company.

#### B.      What the Law Requires

### The Antibribery Provisions
The U.S. Foreign Corrupt Practices Act ("the FCPA") antibribery provisions prohibit the offer, promise or payment of bribes to foreign officials in order to obtain or retain business or secure any improper advantage. A "foreign official" is defined as:

- Any elected official, officer or employee of a foreign or non-U.S. government;

- Any officer or employee of a government-owned or government-controlled state enterprise (such as a government-owned shipping company, or government-controlled maritime agency, or a national oil and gas company);

- Any officer or employee of a public international organization (e.g., World Bank, International Monetary fund);

- Any person acting in an official capacity for or on behalf of a foreign government, government entity, or public organization;

- Any official of a foreign political party;

- Any candidate for foreign political office; and

- Any private consultant who also holds a position with, or acts on behalf of, a foreign government or with a public international organization, or with an enterprise owned or controlled by a foreign government.

The FCPA prohibits both direct and indirect payments to foreign officials. If a company or individual knows that improper payments, services or benefits will be provided to foreign officials by their agents, consultants, or other business partners, they will face legal exposure under the FCPA. "Knowledge" under the FCPA means being "aware of" or "having a firm belief" that the prohibited conduct (offer or payment of a bribe) is "substantially certain to occur." "Knowledge" is also determined to exist for purposes of the FCPA where a person acts in "conscious disregard" of suspicious circumstances. The antibribery provisions of the FCPA are enforced by the U.S. Department of Justice.

## The Books and Records Provisions
The FCPA also contains provisions that require issuers of securities (e.g., publicly held companies or other issuers) to maintain books, records and accounts which, in reasonable detail, accurately reflect the transactions or activities of the company. "Reasonable detail" means "such level of detail and degree of assurance as would satisfy prudent officials in the conduct of their own affairs." Companies are also required to maintain internal accounting controls that "provide reasonable assurances" in areas that include, among other things, the following:

- that transactions are executed in accordance with management's general or specific authorization;
- that transactions are recorded as necessary a) to permit preparation of financial statements in conformity with generally-accepted accounting principles or any other criteria applicable to such statements and b) to maintain accountability for assets; and
- that access to assets is permitted only in accordance with management's general or specific authorization.

The books and records provisions of the FCPA are enforced by the U.S. Securities and Exchange Commission.

## Penalties
Individuals who violate the FCPA are subject to civil fines and penalties, up to and including imprisonment, as well as disciplinary action by the Company. Corporations are subject to severe civil and criminal fines, and other penalties, as well as injunctive relief. Corporate violators of the FCPA also risk debarment from doing business with the U.S. Government, denial of export licenses, and increased tax liability due to possible reductions of their overseas tax credits or acceleration of U.S. taxation of foreign income.

### C.    What Employees Should Do

## Know the FCPA "Red Flags"
You should seek the advice of the Legal Department before proceeding with any activity, transaction or project involving Seabulk International if any of the below-described FCPA red flags or indicators are present:

- the transaction involves or occurs in a country that international and U.S. agencies have identified as presenting a high risk of corruption by government officials (e.g., Nigeria);

- requests for unusually high commissions;

- unusual or excessive payment requests or financial arrangements, such as requests for over-invoicing; up-front payments; mid-stream compensation payments; or payments in a third-party country or to a third party, or to a foreign bank account or in cash or otherwise untraceable funds;

- requests for political or charitable contributions;

- lack of transparency in expenses and accounting records;

- a party's apparent lack of qualifications or resources to perform the services offered;

- an agent or partner's bad reputation;

- the partner or agent representative has been recommended by a government official;

- discovery of a previously undisclosed relationship between a partner, agent or contractor of the Company and a government official;

- a desire of the partner, agent or contractor to keep secret its relationship with a U.S. company or the terms of its retention;

- the partner, agent, or representative has been charged with violating local or foreign laws or regulations relating to the award of government contracts; and

- any request by a partner, agent or contractor that creates reasonable suspicion of a possible bribe (e.g., a request to backdate invoices; requests for payments or commissions above the "going rate" in the country; requests for payment to an off-shore account; requests for a large bonus).

## Conduct Appropriate Due Diligence on Agents and Partners

In consultation with the Legal Department, before retaining an agent or other contractor to perform services in connection with Seabulk International's business or before entering a partnership or other type of joint venture in international locations, (particularly where a red flag is present), employees should perform the following steps and record the results as documentation of the Company's due diligence:

## Verify the Ownership, Legal Structure and Reputation of the Agent or Partner
## Identify the Agent's or Partner's Relationship with Government Officials

The employee should identify and assess the following:

- whether any government officials or government agencies are directly or indirectly involved with the agent or partner, or the agent's or partner's business activities;

- whether there are indications that the agent or partner is willing to provide a benefit to a government official for an improper purpose;

- whether a government official is a shareholder, officer, director or agent of the agent or partner or in the agent's or the partner's business; and

- whether the agent or partner is related to, or a close associate of, a government official.

## Assess Agent or Partner Compliance Profile

To the extent practicable:
- Determine what, if any, compliance systems and financial controls the agent or partner has implemented to ensure compliance with applicable laws and regulations, including local antibribery laws; and
- If possible, review the agent's or partner's financial records to determine its payment procedures and the nature of any contracts with government agencies or other instrumentalities.

## Review Agent or Partner Contracts with Government Entities
## Review Agent or Partner Contracts with Public International Organizations

To the extent possible:
- Obtain information about any contracts (or subcontracts) the agent or partner may have with any public international organization.
- Obtain information about any loans or other financing that any public international organization provided in connection with any project involving the partner or the partner's business.

## Review Agent or Partner Contracts with Sub-Agents, Consultants or other Representatives

To the extent possible:
- Identify and review all contracts between the agent and partner and any sub-agents, consultants or other representatives.
- Assess whether such contracts contain antibribery provisions and termination clauses for suspected antibribery violations.
- Determine whether the proposed agent or partner has satisfied all of its obligations to such third parties.

## Review Agent or Partner Licenses, Permits and Other Governmental Actions

To the extent practicable:
- Review any existing licenses, permits, franchises, approvals, tax relief or other governmental actions or decisions obtained by the agent or partner.

**Obtain Agent or Partner Certifications of Compliance**
- Obtain a certification of compliance that no government official owns any interest in the proposed agent or partner; and
- Obtain other certifications relating to compliance with all other FCPA provisions.

**Review Local Law**
- Determine whether local law prohibits the agents or partner from entering into the proposed agreement.
- Determine whether local law requires the involvement of a government agency or government official in the agent's business, the partner's business or the joint venture, as applicable.

**Structure of Proposed Partnership or Other Type of Joint Venture**
- Document the ownership and management structure of the proposed entity in the due diligence report.

**Heightened Due Diligence Required**
Whenever one or more of the following conditions is present, employees, in consultation with the Legal Department, must use even more care to conduct very detailed inquiries in performing due diligence of a potential agent or partner:
- The agency, partnership or joint venture arrangement is with government officials or governments, including federal, regional or local officials;
- The arrangement is one in which Seabulk International will have majority ownership or control; or
- The arrangement is one in which Seabulk International will only have minority ownership, but in which it will still have significant management control, influence, and/or board representation.

### D. Facilitating Payments, Promotional Expenses, and Entertainment

**Facilitating Payments**
Under the FCPA, it is permissible to make a "facilitating payment" to a foreign official. A facilitating payment is a nominal payment or gift to a foreign official to expedite or secure the performance of a routine governmental action. A "routine governmental action" is narrowly defined as an action which is ordinarily and commonly performed by a foreign official in:

- obtaining permits, licenses, or other official documents to qualify a person to do business in a foreign country;
- processing papers, such as visas and work orders;
- providing police protection, mail pick-up and delivery, or scheduling inspections associated with contract performance or inspections related to transit of goods across country;
- providing telephone, power, or water supply service, loading or unloading cargo, or protecting perishable products or commodities from deterioration; or
- other similar actions.

Seabulk International policy recognizes that there may be circumstances involving risks to health and safety that necessitate making a facilitating payment to a government official. Whenever possible, prior approval of the Legal Department should be sought before the facilitating payment is made. **By definition, facilitating payments are of nominal or low value or amount.** All facilitating payments must be reported to the Legal Department in writing (email is adequate), and accurately and properly reflected in Seabulk International's books and records. Such payments should never be recorded under Company "miscellaneous" accounts. Where practicable, the accounting entry should expressly state the extent to which the facilitating payment was made due to health and security risks, or whether it was necessitated in order to obtain some other routine governmental action.

**Promotional Expenses**
The FCPA permits the payment of all reasonable, necessary and bona fide expenses to foreign officials if the payments or benefits are in connection with the promotion or demonstration of products or services, or the performance of a contract with a foreign government or state-owned company.

Seabulk International policy allows coverage or reimbursement of promotional expenses (e.g., seminar or educational program attendance, tours of facilities or vessels, etc.) for government officials. The cost of such payments must be reasonable, fully documented, supported by original receipts (to the same extent as the employee expense reimbursement policy), and properly approved and submitted to the Controller. Such permissible expenses include the following:

**Meal and Entertainment Expenses**
These expenses can be covered if the meals and entertainment occur in the general location of a meeting with government officials, and are attended by appropriate company representatives; the meal expenses are legitimate and in conformance with normal, local business protocols; and the entertainment and meals are permitted under applicable U.S. and local law for such officials.

**Nominal Gifts**

Consistent with Company Policies and procedures, and subject to U.S. and local law requirements, marketing paraphernalia bearing the Company logo (e.g. shirts, umbrellas, caps, golf balls, etc.) may be provided to foreign officials. All other proposed gifts must receive prior approval of the Legal Department.

**Travel and Lodging Expenses**

Consistent with Company policy and subject to applicable U.S. and local law requirements, travel and lodging expenses incurred by foreign officials for trips by such officials to meet with Seabulk International representatives or visit Company facilities are permissible. The expenses must relate to reasonable and bona fide transportation, hotel and meal expenses.

Such payments should never be made as follows:
- in cash to the foreign official;
- for expenses incurred by family members of the foreign official;
- for side trips or tourist trips not directly related to the Company's business; or
- in extravagant amounts.

All payments described above should be accurately recorded and documented in the Company's books and records. Employees should consult the Legal Department on specific documentation and expense control procedures to follow when a foreign official seeks travel reimbursement from Seabulk International for expenses incurred for travel to Company facilities, meetings or business-related activities.

## II.    Trade Sanction Guidelines

### A.    Seabulk International Policy On Restricted Trade

It is Seabulk International's policy to comply with U.S. and U.N. Trade Sanctions laws and all export control laws and regulations applicable to Company operations around the world. Suspected violations of this policy could result in severe disciplinary actions, up to and including termination from the Company.

### B.    What The Laws Are

**Trade Sanctions Laws**

The President, by Executive Order, and Congress, by legislation, sometimes impose unilateral economic or trade sanctions against foreign countries and their governments. These restrictions are imposed in order to advance U.S. foreign policy objectives or influence a foreign government's conduct in particular areas of U.S. concern (e.g., human rights, nuclear proliferation, terrorism). These trade restrictions are laws and regulations which can effectively limit or prohibit trade by U.S. persons and companies with targeted foreign governments, or agents of those governments or countries. The United Nations sometimes imposes similar restrictions on countries which are engaged in certain offending conduct.

### C.    What These Laws Prohibit

**Prohibited Conduct**

U.S. trade sanction restrictions may include the following: 1) prohibitions on any trade activity within a targeted country (e.g., exports/imports/trade or financing transactions), including trade with that foreign government or any agency or recognized agents of that government; 2) prohibitions on investment within the targeted country or in connection with property owned or controlled by that country's government; 3) blocking or freezing the assets of the foreign government, including across-the-board prohibitions against transfers or transactions with regard to that restricted property; 4) prohibitions related to transactions reasonably believed to further terrorism in the U.S. or proliferation of weapons of mass destruction; or 5) restrictions on exports of U.S. technology and services to the targeted country and imports of technology and services from the embargoed country; and 6) dealings with persons or entities that the U.S. considers to be the foreign government's agents, otherwise known as "Specially Designated Nationals" ("SDNs").

**Facilitation and Evasion**

These laws and regulations often include provisions that prohibit persons and companies from engaging in conduct that "facilitates" the above prohibited activities by others. The sanctions laws also prohibit companies and individuals from engaging in actions to "avoid" or "evade" otherwise prohibited conduct. Enforcement authorities broadly interpret and construe the provisions relating to "facilitation" and "avoidance" or "evasion" of U.S. sanctions laws by persons or companies otherwise subject to these laws. Thus, any action taken by a U.S. person or company that assists or aids the activities of a non-U.S. person or non-U.S. company with respect to a restricted country ( that would otherwise be unlawful for the U.S. person or U.S. company to do directly ) could be interpreted as an unlawful "facilitation,"

"avoidance," or "evasion."

## Who Is Covered

U.S. trade sanctions laws and regulations apply to U.S. persons in the broadest sense. U.S. persons are defined as U.S. citizens, residents and nationals, U.S.-incorporated companies, wherever located, and companies with offices in U.S. territories. These laws also sometimes apply to foreign subsidiaries of U.S. companies (e.g., the sanctions against Cuba and N. Korea).

## The Restricted Destinations

Countries subject to major trade or other U.S. sanctions include:

* Cuba
* Iran
* Iraq
* Libya
* N. Korea
* Serbia
* Sudan
* Syria
* Taliban (Afghanistan)
* UNITA-controlled parts of Angola.

## License and Permission

U.S. persons and companies can apply to the U.S. Department of Treasury, Office of Foreign Assets Control ("OFAC"), for permission or a license to conduct an activity in a targeted country. Some trade sanction laws provide exceptions to the prohibitions for certain publicly available information and materials, as well as intellectual property protection, maintenance and defense in an embargoed country. Licenses may be sought for humanitarian or charitable activities or donations. Licenses may also be sought for sales of medicine, certain grains and food, and other limited items in certain countries. In some instances (e.g., Iraq), a license or other permission must also be obtained from the United Nations, pursuant to its procedures.

## Penalties

Criminal penalties for individuals can range from imposition of significant fines to lengthy terms of imprisonment for each violation. Individuals are also subject to civil penalties. Corporations are subject to criminal and civil fines, as well as injunctive or other appropriate relief.

The U.S. State Department (and related agencies), the President, and, at times, Congress, provide guidance to OFAC with respect to promulgation of sanctions regulations, as well as enforcement and administration of the sanctions laws and regulations.

### D.    What Employees Should Do

Due to the complexity of these laws and the serious penalties for individuals and corporations for a violation, employees should consult with the Legal Department before proceeding with any transaction that involves or could involve one of the restricted countries targeted by the US sanctions laws and regulations.

Prior to such consultation, employees should obtain information relevant to the transaction, including the identity and background of the parties, the intended customer, the nature of the transaction, and the basis for the belief that the transaction involves a restricted country. Employees, or at their request the Legal Department, should determine whether any entities or persons involved are on the US Department of Treasury's List of Specially Designated Nationals/Entities, as found at the email address: www.treas.ofac.gov, under the heading described as "SDN".

In those circumstances where an employee is unable to obtain the relevant information involving the suspect transaction, the Legal Department will assist with the due diligence review in making its determination as to the lawfulness of the proposed activity.

## III.    Export Control Guidelines

### A.    Seabulk International Policy on Export Controls

It is Seabulk International's policy to comply with U.S. export control laws applicable to its business, subject to the requirements of U.S. law. Any suspected violations of export control laws should be reported to the Legal Department. Employees who violate the export control laws or these guidelines are subject to disciplinary action, up to and including dismissal from the Company.

### B.    What the Export Control Laws Cover

**Export Control Objectives**

The U.S. government has promulgated regulations (Export Administration Regulations or the "EAR") which, depending in part on the items being exported and on their ultimate destination or end-users, either prohibit or require U.S. government permission for the export from the U.S. and re-export from other countries of certain U.S.-sourced items, commodities and technology. The EAR are intended to preserve and protect the national security or promote the foreign policy and nonproliferation objectives of the U.S. government. They attempt to limit and regulate exports that the U.S. government believes promote or foster the following:

- Nuclear, biological or other weapons proliferation;
- Transfers of sensitive U.S. technology and encryption;
- Transfers of U.S.-origin items to an improper or restricted destination;
- Transfer of controlled U.S.-origin commodities (e.g. chemicals, computers, military equipment, and oil-field accessories); and
- Improper dual use of certain items by prohibited end-users.

**Facilitation with Knowledge**
Service providers-for example, transporters-who facilitate exports with knowledge (or reason to believe) that such exports may be restricted under the EAR risk being found in violation of the EAR, unless their employees follow the guidelines described below under the heading "What Employees Should Do."

**Penalties**
Penalties against individuals for violating the EAR range from criminal fines to imprisonment. Corporate violators face civil and criminal fines, and denial of export licenses.

C.      **What Employees Should Do**

**Know the List of "Restricted Destinations" and Require Certification of Compliance from Customers**

The EAR prohibit or severely restrict exports to the "Restricted Destinations" listed under Section II(C) of these Policy Guidelines. Employees should contact the Legal Department before considering any business involving these destinations. Additionally, because the U.S. Government considers China a risk in terms of weapons proliferation, employees should contact the Legal Department before considering any business involving China.

Transportation of exported items to many other locations around the world and/or involving certain prohibited end-users may put the Company, as a carrier, at risk of violating the EAR. To avoid such risk, all new transportation contracts (or the next amendment to existing contracts) involving non-U.S. locations should include the following certification:

"Charterer warrants that any and all licenses required to be obtained from the U.S. Government in order to allow Charterer or third parties contracting with Charterer to export, sell or otherwise transfer the cargo (including but not limited to licenses from the U.S. Department of the Treasury Office of Foreign Assets Control and the U.S. Department of Commerce Bureau of Export Administration) have been obtained. Charterer further warrants that no person or entity to which the cargo may be delivered by the Vessel is prohibited by the U.S. Government from taking such delivery."

**Recognize and Report "Red Flags"**
All employees and relevant agents should contact the Legal Department before proceeding with an export (which term includes transportation) from the U.S. (or a re-export from another country of U.S.-sourced goods) if the following "red flags" exist:
- The end-use of the item is unknown or in doubt and the customer or purchasing agent is reluctant to offer information about the end-use.
- The product's capabilities do not fit the buyer's line of business.
- The item ordered is inconsistent with the technical level of the country to which it is being shipped (e.g. high-tech equipment to a country that has no technology industry.)
- The customer is willing to pay cash.
- The customer has no business background.
- The customer is unfamiliar with the product's performance characteristics but still wants the product.
- Routine installation, training, or maintenance services are declined by the customer.
- Delivery dates are vague, or deliveries are planned for out of the way destinations.
- A freight-forwarding firm is listed as the product's final destination.
- The shipping route is abnormal for the product and destination.
- Packaging is inconsistent with the stated method of shipment or destination.
- When questioned, the buyer is evasive about whether the purchased product is for domestic use, for export, or for re-export.

**Know Your Customer**

Unless cleared by the Legal Department, no Seabulk International activity or transaction should proceed where export control "red flags" are present. It follows that Seabulk International has an affirmative duty to inquire into the customer's business dealings, reputation and representations whenever red flags exist. Such inquiries should be conducted under the supervision of the Legal Department. When red flags are present, employees must inquire about end-use, the end-user or the ultimate-country destination. When there are no red flags, employees may, as applicable, rely on the transportation contract certification quoted above or (for other types of business dealings) on the representations of customers, which should then be reflected in shipping documents or export license applications, as appropriate.

When a "red flag" is reported, the Legal Department will ascertain whether the customer's name or address is found (or appears similar to any found) on the Department of Commerce Bureau of Export Administration's ("BXA") "Denied Persons" List. Any persons or entities identified on the BXA Denied Persons List are generally barred or blocked from any export and import activity involving the U.S., U.S. companies, U.S. Citizens, and U.S.-origin items.

IV.    **Antiboycott Guidelines**

A.    **Seabulk International Policy on U.S. Antiboycott Laws**

Seabulk International's policy requires employees to comply with all United States laws and regulations prohibiting U.S. persons and companies from boycotting or attempting to boycott countries that are friendly to the United States. To boycott means to refuse to deal with or do business with a certain entity such as a country, competitor or supplier. Violation of this policy or these guidelines could result in disciplinary action, up to and including termination from the Company. Suspected violations of this policy or questions regarding the guidelines should be directed to the Legal Department.

B.    **The U.S. Antiboycott Law Requirements**

**General Prohibitions**

The "antiboycott law" provisions are largely found in the Export Administration Regulations ("EAR"), as are the export control requirements previously discussed. The antiboycott laws require (and in some cases, merely encourage) U.S. companies to refuse to support or participate in boycotts that are not expressly supported by the U.S. government. The goal of these laws is to prevent U.S. companies from being used by foreign governments as tools in the implementation of the foreign policies of those governments. The antiboycott laws generally prohibit:

• Agreements or requests to refuse, or actual refusal, to do business with or in Israel or with blacklisted companies.
• Agreements or requests to discriminate, or actual discrimination, against other persons based on race, religion, sex, national origin or nationality.
• Agreements or requests to furnish, or actual furnishing, of information about business relationships with or in Israel or with blacklisted companies.
• Agreements or requests to furnish, or actual furnishing of, information about the race, religion, sex, or national origin of another person.
• Implementing letters of credit containing prohibited boycott terms or conditions.

The laws apply to all U.S. citizens, residents and nationals; all U.S. companies; as well as any individual or company located in the U.S., and its foreign affiliates. The laws apply whenever an activity involves a sale, purchase, or transfer of goods, services or information within the U.S. or between the U.S. and a foreign country. U.S. exports; imports; forwarding, shipping and supply agreements; and financings, both overseas and in the U.S., are covered.

**Possible Boycotting Countries**

One significant boycott that is not supported by the U.S. government is a boycott of Israel enforced by many member countries of the Arab League. These boycotting countries include:

•      Bahrain
•      Iraq
•      Kuwait
•      Lebanon
•      Libya
•      Oman
•      Qatar
•      Saudi Arabia
•      Syria
•      The Untied Arab Emirates
•      Yemen

This list, however, is not exclusive. As part of the boycott, these countries prohibit Israeli goods and services from being imported into their country. Also, the boycotting countries prohibit the exportation of their goods and services to Israel.

An important aspect of the Arab boycott is that the boycotting countries do not deal with firms and persons in third countries that do business with Israel. These firms, persons and third countries that do business with Israel have been blacklisted by the boycotting Arab countries. It is illegal to refuse to do business with a firm, person or country at the request of a boycotting country.

**Reporting**
U.S. companies are required to file with the Department of Commerce Office of Antiboycott Compliance in Washington, D.C., quarterly reports describing the requests received to support an unlawful boycott. Reports must also be filed with the Internal Revenue Service regarding operations in, with, or related to, a boycotting country or its nationals, and requests received to support or participate in an international boycott. The U.S. Treasury Department publishes quarterly a list of "boycotting countries."

**Penalties**
Individuals are subject to severe penalties for violations of the antiboycott laws, including civil and criminal fines as well as imprisonment. Corporate violators are subject to civil and criminal fines and penalties, denial or suspension of export privileges, and denial of tax deferrals, tax credits or other tax benefits.

### C.    What Employees Should Do

**Employees should be aware that receiving any boycott request raises antiboycott concerns.** A "Boycott Request" is a request to supply any information, take any action, or refrain from any action if the requested behavior or conduct could be considered to further or support a prohibited boycott. A request could be included in a proposed bid invitation, contract, purchase order, letter of credit or other agreement, provision, requirement, or condition calling for such information, action or non-action. **For example, an employee might be asked to certify that a product is not of Israeli origin or does not contain raw materials of Israeli origin. An employee might be asked to certify that the Company is not blacklisted and does not affiliate with any blacklisted entities. An employee may be asked whether the Company employs or contracts with Jewish persons or companies.** Words and phrases appearing in quotes below are considered to be antiboycott "red flags":

- "blacklist";
- "Israel," "Israeli" or "Jewish";
- Company shall "comply with" the laws or regulations of a boycotting country;
- "Vessel is not banned from entering, or is permitted, eligible or allowed to enter" the port of a boycotting country;
- Company has "a qualified agent or representative" in a boycotting country; or
- "Goods are not sourced from Israel."

The Legal Department can provide employees with a list of other examples of contract provisions that are covered by the U.S. antiboycott laws.

Seabulk International employees should avoid participating in a prohibited boycott. Employees receiving a request for information that raises an antiboycott issue should promptly report such request to the Legal Department.

### V.    Conclusion

Employees should report any suspected violations of these policies and guidelines to Seabulk International Management or the Legal Department, or, by calling the Code of Business Conduct hotline at 954-524-4200, extension 822. Questions regarding these guidelines should be directed to the Legal Department.



Seabulk International, Inc.
2200 Eller Drive • P.O. Box 13038 • Fort Lauderdale, Florida 33316



# SEABULK INTERNATIONAL

Seabulk International, Inc. • 2200 Eller Drive • P.O. Box 13038 • Fort Lauderdale, FL 33316
www.seabulkinternational.com

**Stephen B. Finch**
*Assistant General Counsel*

July 23, 2003

Phone: (954) 524-4200  Ext. 808
Fax: (954) 527-1772
E-mail: stephen.finch@sbulk.com

## *Via Fax and Federal Express*

John J. Blanchard, Esq.
Office of Counsel, PJO
Office of the General Counsel
Department of the Navy
Washington Navy Yard
720 Kennon Street, S.E., Room 214
Washington, DC 20374-5012

Re:     Quarterly Report of Seabulk International, Inc. ("SBI")
        (f/k/a Hvide Marine Incorporated)

Dear Mr. Blanchard:

This quarterly report is submitted on behalf of SBI Management pursuant to Section 5B of SBI's Agreement with the Department of the Navy dated November 7, 2000 (the "Agreement").

1.  Pursuant to Section 4A of the Agreement, SBI has distributed copies of its Code of Business Conduct ("CBC") to all directors, officers, U.S. based employees, and overseas managers and vessel officers. Taking into account departures and new hirings, our target population is now 1638, all of whom have received the CBC as indicated above. (See attached Distribution Tally Sheet).

2.  In our 4/24/03 report, we noted that, pursuant to Section 4F of the Agreement, 274 of 277 employees (99%) required to receive Ethics Training under the Agreement had received such training. Since 4/24/03, an additional 15 (8 shoreside and 7 oceangoing) employees have received videotaped ethics training, as reflected in the enclosed attendance sheets and Ethics Training Tally. Taking into account departures and new hirings, our target population is now 263, of which only 2 employees...one on board an oceangoing tanker and one a tug crewmember...have yet to be trained. These remaining, untrained employees will be trained as soon as practicable.

3.  A quarterly report from the undersigned, as Ethics Advisor, pursuant to Section 5C of the Agreement, is being submitted to you separately.

Sincerely,

*SBFinch*

Stephen B. Finch

Enclosures
cc:     Tony Gagliardi

**ATTACHMENT / EXHIBIT _2_**

L:\SBF\NAVY REPORTS\Quarterly report 7.23.03.doc

Seabulk Offshore • Seabulk Tankers • Seabulk Towing

# ☒ SEABULK INTERNATIONAL

Seabulk International, Inc. • 2200 Eller Drive • P.O. Box 13038 • Fort Lauderdale, FL 33316
www.seabulkinternational.com

**Stephen B. Finch**
*Assistant General Counsel*

July 23, 2003

Phone: (954) 524-4200 Ext. 808
Fax: (954) 527-1772
E-mail: stephen.finch@sbulk.com

*__Via Fax and Federal Express__*

John J. Blanchard, Esq.
Office of Counsel, PIO
Office of the General Counsel
Department of the Navy
Washington Navy Yard
720 Kennon Street, S.E., Room 214
Washington, DC 20374-5012

RE:    Seabulk International, Inc. ("SBI") (f.k.a. Hvide Marine Incorporated)
          Ethics Advisor's Quarterly Report

Dear Sir:

Pursuant to Sections 4B(6), 4E(4)(c), 4F(3) and 5C of SBI's Agreement with the Department of the Navy dated November 7, 2000 (the "Agreement"), the undersigned, in my capacity as Ethics Advisor under the Agreement, submits the following Ethics Advisor's Quarterly Report.

1.    I am neither aware of nor suspect any instances of misconduct that would contravene the letter or spirit of the Agreement, or the standard of business conduct mandated thereby (reference Section 4B(6) of the Agreement).

2.    In my April letter (copy enclosed), I reported on the status of recommendations contained in the annual audit report.    Since then, our IS Department has created and implemented an automatic change-of-status-alert program as recommended in Recommendation 2 of the audit report.    All audit recommendations are now implemented.

3.    In our last report, dated 4/24/03, we noted that SBI's Ethics Training Program had been presented to 274 out of a total of 277 employees required to receive training by the Agreement -- i.e., 99%. Since our April report, an additional 15 (8 shoreside and 7 oceangoing) employees have received videotaped ethics training. Enclosed are copies of all attendance sheets generated since our April report (reference Section 4F(3) of the Agreement). Taking into account departures and new hires, our target population of employees is now 263, of which only 2 employees...one on board an oceangoing tanker and one tug crewmember...have yet to be trained (as indicated by the enclosed Ethics Training Tally Report). Both will be trained as soon as practicable.

John J. Blanchard, Esq.
July 23, 2003
Page Two

    4.    There have been no instances of disciplinary action for violations of the Code of Business Conduct; no criminal investigations; no qui tam suits; no defective pricing cases; no Ethics Hotline calls; and no other matter which might affect SBI's current responsibility status (reference Section 5C of the Agreement).

I welcome any suggestion which the Navy might have concerning the form and/or content of this report. Please do not hesitate to call me in this respect.

Very truly yours,

Stephen B. Finch

Enclosures
cc:    Tony Gagliardi

L:\SBF\NAVY REPORTS\Quarterly report - Ethics Advisor - 7.23.03.doc



# SEABULK INTERNATIONAL

Seabulk International, Inc. • 2200 Eller Drive • P.O. Box 13038 • Fort Lauderdale, FL 33316
www.seabulkinternational.com

**Stephen B. Finch**
*Assistant General Counsel*

April 24, 2003

Phone: (954) 524-4200 Ext. 808
Fax: (954) 527-1772
E-mail: stephen.finch@sbulk.com

*Via Fax and Federal Express*

John J. Blanchard, Esq.
Office of Counsel, PIO
Office of the General Counsel
Department of the Navy
Washington Navy Yard
720 Kennon Street, S.E., Room 214
Washington, DC 20374-5012

RE:    Seabulk International, Inc. ("SBI") (f.k.a. Hvide Marine Incorporated)
       Ethics Advisor's Quarterly Report

Dear Sir:

Pursuant to Sections 4B(6), 4E(4)(c), 4F(3) and 5C of SBI's Agreement with the Department of the Navy dated November 7, 2000 (the "Agreement"), the undersigned, in my capacity as Ethics Advisor under the Agreement, submits the following Ethics Advisor's Quarterly Report.

1.    I am neither aware of nor suspect any instances of misconduct that would contravene the letter or spirit of the Agreement, or the standard of business conduct mandated thereby (reference Section 4B(6) of the Agreement).

2.    I enclosed with my January letter the report of my second annual audit of the components of the Compliance Program pursuant to Section 4E(4)(b) of the Agreement (reference also Section 4E(4)(c) of the Agreement). Since then, we have taken the following steps in response to the principal audit findings and recommendations appearing on the first page under "Audit Comments" and "Significant Audit Recommendations."

**Recommendation 1.**    The list of debarred company contractors should be updated weekly and copies of the list should be distributed to each buyer in the Purchasing Department. (Previously this list had been updated only infrequently.) The list should be referred to prior to approving a contractor for a purchase order, in order to ensure that the selected contractor which had previously been identified as "not debarred" has not been subsequently debarred.

**Response:**    A computerized program has been created and implemented to compare the U.S. Government's computerized list of debarred entities/individuals

Seabulk Offshore • Seabulk Tankers • Seabulk Towing

against the company's vendor list on a weekly basis. If a company vendor shows up on the government list, the program flags that company/individual. That company/individual is then removed from Seabulk's list of approved vendors.

**Recommendation 2.** A computerized program should be created and implemented in the hiring system that would [automatically] issue an alert as to when an employee status changes from "Leave of Absence/Inactive" to "Active", so that appropriate human resources personnel can ensure that the individual continues to meet all applicable Navy Compliance requirements prior to returning to work.

**Response:** The company's IS Department has not been able to create an acceptable automatic change-of-status-alert program as recommended and is continuing work on an acceptable design. In the interim, a written procedure has been implemented whereby human resources personnel are instructed to immediately verify, by examining Oracle computer records (our human resources and accounting database), that each employee returning to "Active" status from "Leave of Absence" or "Inactive" status has met all applicable Navy Compliance requirements.

3.  In our last report, dated 1/23/03, we noted that SBI's Ethics Training Program had been presented to 274 out of a total of 287 employees required to receive training by the Agreement -- i.e., 95%. Since our January report, an additional 11 (3 shoreside and 8 oceangoing) employees have received videotaped ethics training. Enclosed are copies of all attendance sheets generated since our January report (reference Section 4F(3) of the Agreement). Taking into account departures and new hires, our target population of employees is now 277, of which only 3 employees...all on board oceangoing tankers...have yet to be trained (as indicated by the enclosed Ethics Training Tally Report). All will be trained as soon as practicable.

4.  There have been no instances of disciplinary action for violations of the Code of Business Conduct; no criminal investigations; no qui tam suits; no defective pricing cases; no Ethics Hotline calls; and no other matter which might affect SBI's current responsibility status (reference Section 5C of the Agreement).

I welcome any suggestion which the Navy might have concerning the form and/or content of this report. Please do not hesitate to call me in this respect.

Very truly yours,

Stephen B. Finch

Enclosures
cc:    Tony Gagliardi

## CODE OF BUSINESS CONDUCT
### Receipt Acknowledgment Tally

As of: 7/15/03

| DIVISION | TOTAL DIST. | RECEIPTS RETURNED | TOTAL OUTSTANDING | % RETURNED | % DIFF. PREV. QTR |
|---|---|---|---|---|---|
| DOMESTIC REPORT (Admin & Crew) | 938 | 924 | 14 | 98% | 1% |
| SOII ( Admin & Crew) | 217 | 217 | 0 | 100% | Same |
| SOSA - ADMIN (from SOSA) | 67 | 67 | 0 | 100% | Same |
| SOSA - CREW (from SOSA) | 448 | 448 | 0 | 100% | Same |
| TOTALS | 1670 | 1656 | 9 | 99% | Same |

# CODE OF BUSINESS CONDUCT
## Ethics Training Tally

**As of: 7/15/03**

| DIVISION | TRAINING REQUIRED | TRAINING COMPLETE | TRAINING OUTSTANDING | % COMPLETE | % DIFF PREV QTR |
|---|---|---|---|---|---|
| AMERICA | 19 | 19 | 0 | 100% | |
| BRENTON REEF | 9 | 9 | 0 | 100% | |
| CONSULTANTS | 1 | 1 | 0 | 100% | |
| DEFENDER | 8 | 8 | 0 | 100% | |
| MAGNACHEM | 17 | 17 | 0 | 100% | |
| MOBILE BAY TOWING | 21 | 21 | 0 | 100% | |
| PORT CANAVERAL TOWING | 8 | 8 | 0 | 100% | |
| PORT EVERGLADES TOWING | 22 | 22 | 0 | 100% | |
| SEABULK ADMINISTRATION | 31 | 31 | 0 | 100% | |
| SEABULK ARTIC | 15 | 15 | 0 | 100% | |
| SEABULK CHALLENGE | 11 | 11 | 0 | 100% | |
| SEABULK MARINER | 9 | 9 | 0 | 100% | |
| SEABULK PRIDE | 8 | 8 | 0 | 100% | |
| SEABULK TANKERS, INC. | 12 | 12 | 0 | 100% | |
| SEABULK TOWING - MANATEE | 4 | 4 | 0 | 100% | |
| SEABULK TOWING - OFFSHORE | 10 | 10 | 0 | 100% | |
| SEABULK TOWING - TAMPA BAY | 46 | 45 | 1 | 98% | |
| SEABULK TRADER | 12 | 11 | 1 | 92% | |
| **TOTALS** | **263** | 261 | 2 | **99%** | **Up 1%** |

# ETHICS TRAINING REPORT 7-10-03

| ROW # | CALC | FULL NAME | ORGANIZATION | PEOPLE GROUP | EMPLOYMENT CATEGORY | ASSIGNMENT STATUS | PERSON TYPE | ET | ET DATE | GRADE |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | BIBBO, ROBERT A | AMERICA | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2001/07/15 | 3 |
| 2 | 2 | BRADLEY, KEVIN | AMERICA | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2001/07/15 | 2 |
| 3 | 3 | BURKE, LAURENCE | AMERICA | Licensed TANKER | Fulltime-Temporary | Active Assignment | Rehired Employee | Y | 2003/03/18 | |
| 4 | 4 | DECKER, RICHARD S | AMERICA | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2001/07/24 | 3 |
| 5 | 5 | GOOS, STEPHEN E | AMERICA | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2001/07/15 | 3 |
| 6 | 6 | GREEN, KEVIN E | AMERICA | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2001/07/15 | 3 |
| 7 | 7 | HALLS, KENNETH S | AMERICA | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2002/11/05 | 3 |
| 8 | 8 | HANEY, PAUL E | AMERICA | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/11/09 | 1 |
| 9 | 9 | KONEFAL, DOUGLAS E | AMERICA | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/07/24 | 1 |
| 10 | 10 | LEIGHT, EDWARD | AMERICA | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/03/02 | |
| 11 | 11 | LOCHMANN, JOHN T | AMERICA | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2001/07/15 | 3 |
| 12 | 12 | MOONEY, JOSEPH A JR. | AMERICA | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2001/07/15 | 3 |
| 13 | 13 | PARK, ROBERT F | AMERICA | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2001/07/24 | 3 |
| 14 | 14 | RUMMEL, GEORGE W JR. | AMERICA | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2001/07/24 | 3 |
| 15 | 15 | STEEVES, ERNEST R | AMERICA | Licensed TANKER | Fulltime-Regular | Active Assignment | Rehired Employee | Y | 2003/08/29 | 1 |
| 16 | 16 | STEWART, JAMES A | AMERICA | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/07/24 | 3 |
| 17 | 17 | VELA, DAVID D | AMERICA | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2001/07/15 | 3 |
| 18 | 18 | WELCH, DEAN P | AMERICA | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2001/07/24 | 3 |
| 19 | 19 | WILHITE, TIMOTHY O | AMERICA | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2001/07/10 | |
| | 19 | | | | | | | | | |
| 20 | 20 | DELBOS, LESLIE E | BRENTON REEF | Licensed TANKER | Fulltime-Temporary | Active Assignment | Rehired Employee | Y | 2002/08/27 | |
| 21 | 21 | DINNES, STEPHEN J | BRENTON REEF | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/02/22 | |
| 22 | 22 | DOREMUS, LUCAS D | BRENTON REEF | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/02/27 | |
| 23 | 23 | FLYNN, RICHARD P | BRENTON REEF | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/07/16 | |
| 24 | 24 | FORD, ROBERT H | BRENTON REEF | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/07/27 | |
| 25 | 25 | GASPER, JOHN | BRENTON REEF | Licensed TANKER | Fulltime-Temporary | Active Assignment | Rehired Employee | Y | 2002/07/16 | |
| 26 | 26 | MILLIGAN, JOHN S | BRENTON REEF | Licensed TANKER | Fulltime-Temporary | Active Assignment | Rehired Employee | Y | 2002/02/27 | |
| 27 | 27 | POOLE, MARTIN D | BRENTON REEF | Licensed TANKER | Fulltime-Temporary | Active Assignment | Rehired Employee | Y | 2003/01/15 | |
| 28 | 28 | WRIGLEY, WALLACE W | BRENTON REEF | Licensed TANKER | Fulltime-Temporary | Active Assignment | Rehired Employee | Y | 2001/07/24 | 3 |
| | 9 | | | | | | | | | |
| 29 | 29 | ASHWORTH, JOSEPH EDWARD | DEFENDER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/08/27 | |
| 30 | 30 | BRADLEY, KEITH E | DEFENDER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/10/17 | |
| 31 | 31 | BRANTLEY, ROBERT G | DEFENDER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/08/28 | |
| 32 | 32 | HUTCHINS, WILLIAM R | DEFENDER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Rehired Employee | Y | 2002/08/27 | |
| 33 | 33 | KELLER, SCOTT K | DEFENDER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Rehired Employee | Y | 2002/07/22 | |
| 34 | 34 | MILLER, BRIAN C | DEFENDER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Rehired Employee | Y | 2002/03/08 | |
| 35 | 35 | MOORE, WESLEY P | DEFENDER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/09/09 | |
| 36 | 36 | SPRAGUE, GILMAN R | DEFENDER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/03/08 | |
| | 8 | | | | | | | | | |
| 37 | 37 | ANDERSON, JAMES R | MAGNACHEM | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2002/03/04 | 1 |
| 38 | 38 | BARRETT, DONALD P | MAGNACHEM | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/11/27 | 1 |
| 39 | 39 | BOLTZ, HOWARD R | MAGNACHEM | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2002/03/04 | 3 |

G:\HR\NORA\CBC\Ethics Report 7-10-03 Final A.xls

| ROW # | CALC | FULL NAME | ORGANIZATION | PEOPLE GROUP | EMPLOYMENT CATEGORY | ASSIGNMENT STATUS | PERSON TYPE | ET | ET DATE | GRADE |
|---|---|---|---|---|---|---|---|---|---|---|
| 40 | 40 | BOONE, RICHARD L | MAGNACHEM | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/02/25 | |
| 41 | 41 | BREMNER, WILLIAM F | MAGNACHEM | Licensed TANKER | Fulltime-Temporary | Active Assignment | Retired Employee | Y | 2001/07/16 | 1 |
| 42 | 42 | CATES, ROBERT J | MAGNACHEM | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/16 | 1 |
| 43 | 43 | DONOVAN, PATRICK J | MAGNACHEM | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/03/29 | 1 |
| 44 | 44 | KALB, ROBERT A | MAGNACHEM | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/03/04 | |
| 45 | 45 | MAC FEAT, JOHN J | MAGNACHEM | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2002/03/04 | |
| 46 | 46 | MARCUSSEN, CHARLES JR. | MAGNACHEM | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2001/09/18 | 3 |
| 47 | 47 | MURPHY, FREDERICK J | MAGNACHEM | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2003/03/29 | 1 |
| 48 | 48 | NICHOLS, ZACHARY | MAGNACHEM | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2002/03/04 | 3 |
| 49 | 49 | PHILLIPS, JAMES F | MAGNACHEM | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2001/09/18 | 3 |
| 50 | 50 | PIERCE, THOMAS C | MAGNACHEM | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/09/18 | 3 |
| 51 | 51 | PIKE, ROBERT F | MAGNACHEM | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2001/09/18 | 3 |
| 52 | 52 | SETLIFF, GUY S | MAGNACHEM | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2002/03/04 | 3 |
| 53 | 53 | WALLINE, RODNEY R | MAGNACHEM | Licensed TANKER | Fulltime-Regular | Active Assignment | Employee | Y | 2002/03/04 | |
| | | | MAGNACHEM | 17 | | | | | | |
| 54 | 54 | BRISTER, JAMES EDGAR | MOBILE BAY TOWING | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2002/02/25 | 5 |
| 55 | 55 | BROADUS, STEVEN E | MOBILE BAY TOWING | Shop N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/05/02 | |
| 56 | 56 | BUSBY, RICHARD B | MOBILE BAY TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/05/02 | |
| 57 | 57 | CAMPBELL, ARMAND J | MOBILE BAY TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/05/02 | |
| 58 | 58 | CRUMPTON, DAVID B | MOBILE BAY TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2002/06/10 | |
| 59 | 59 | CUMMINGS, ROY C. | MOBILE BAY TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/05/02 | |
| 60 | 60 | DABNEY, DAVID B. | MOBILE BAY TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/05/02 | |
| 61 | 61 | DOBSON, MICHAEL W | MOBILE BAY TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/05/02 | |
| 62 | 62 | HAWK, JAMES K | MOBILE BAY TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/05/02 | 6 |
| 63 | 63 | MANDERS, GEORGE C | MOBILE BAY TOWING | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/05/02 | |
| 64 | 64 | MC CANTS, DANIEL E | MOBILE BAY TOWING | Administrative N/A | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/08/28 | |
| 65 | 65 | MILLER, JACKSON | MOBILE BAY TOWING | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/05/02 | |
| 66 | 66 | MINHINNETTE, JAMES S | MOBILE BAY TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/05/02 | |
| 67 | 67 | MINHINNETTE, STEPHEN P | MOBILE BAY TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/05/02 | |
| 68 | 68 | NOEL, TERRY D | MOBILE BAY TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/05/02 | |
| 69 | 69 | OWENS, MARK THOMAS SR | MOBILE BAY TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/05/02 | |
| 70 | 70 | RALSTON, NEWELL W JR. | MOBILE BAY TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2002/06/27 | 6 |
| 71 | 71 | RAYNER, GEORGE W JR. | MOBILE BAY TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/05/02 | |
| 72 | 72 | THORN, KRISTOPHER KYLE | MOBILE BAY TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/05/02 | |
| 73 | 73 | TOMPKINS, JAMES A | MOBILE BAY TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/05/02 | |
| 74 | 74 | WILLIAMS, JOSEPH D | MOBILE BAY TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/18 | |
| | | | MOBILE BAY TOWING | 21 | | | | | | |
| 75 | 75 | CAPIZZI, KEITH D | PORT CANAVERAL TOWING | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/18 | |
| 76 | 76 | HYDE, LUTHER F | PORT CANAVERAL TOWING | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/04 | |
| 77 | 77 | KEATING, GERALD | PORT CANAVERAL TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/18 | |
| 78 | 78 | MC CRACKEN, LUKE T | PORT CANAVERAL TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/18 | 4 |
| 79 | 79 | O'CONNOR, EUGENE D | PORT CANAVERAL TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/18 | |
| 80 | 80 | SOCARRAS, DANIEL M | PORT CANAVERAL TOWING | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2002/02/27 | |
| 81 | 81 | STOLTZ, PAUL D JR. | PORT CANAVERAL TOWING | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/18 | |
| 82 | 82 | TAYLOR, JIMMY P | PORT CANAVERAL TOWING | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/18 | 4 |
| | | | PORT CANAVERAL TOWING | 8 | | | | | | |
| 83 | 83 | ALLEN, SCOTT D | PORT EVERGLADES TOWING | Unlicensed TUG | Fulltime-Temporary | Active Assignment | Employee | Y | 2003/04/15 | |

| ROW # | CALC | FULL NAME | ORGANIZATION | PEOPLE GROUP | EMPLOYMENT CATEGORY | ASSIGNMENT STATUS | PERSON TYPE | ET | ET DATE | GRADE |
|---|---|---|---|---|---|---|---|---|---|---|
| 84 | 84 | BALBONI, JAMES J | PORT EVERGLADES TOWING | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/06/06 | 4 |
| 85 | 85 | CLIFFORD, JOHN C | PORT EVERGLADES TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/04 | 6 |
| 86 | 86 | COLEMAN, WILLIAM E | PORT EVERGLADES TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2002/06/29 | 6 |
| 87 | 87 | CONNER, CHARLES T | PORT EVERGLADES TOWING | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | 6 |
| 88 | 88 | COSTELLO, NELSON | PORT EVERGLADES TOWING | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/04 | 4 |
| 89 | 89 | CURTIS-BROWN, JORGE R | PORT EVERGLADES TOWING | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/04 | |
| 90 | 90 | DUENSING, DOUGLAS D | PORT EVERGLADES TOWING | Shop N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | 6 |
| 91 | 91 | EAVENSON, BRYAN P | PORT EVERGLADES TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/04 | |
| 92 | 92 | KAHLER, JOHN G | PORT EVERGLADES TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | |
| 93 | 93 | MAKUS, EUGENE R | PORT EVERGLADES TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2003/06/11 | |
| 94 | 94 | MATAK, MARTIN | PORT EVERGLADES TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/04 | 4 |
| 95 | 95 | MC GOWAN, DAVID K | PORT EVERGLADES TOWING | Unlicensed TUG | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/03/21 | |
| 96 | 96 | MOISE, GEORGE | PORT EVERGLADES TOWING | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/04 | |
| 97 | 97 | NARBONE, PETER V | PORT EVERGLADES TOWING | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/04 | 4 |
| 98 | 98 | PURCELL, RICHARD B | PORT EVERGLADES TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/06/06 | 3 |
| 99 | 99 | RICCI, THOMAS R | PORT EVERGLADES TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/06/06 | |
| 100 | 100 | ROTERT, STEVEN J | PORT EVERGLADES TOWING | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | 4 |
| 101 | 101 | SANTOS, ROBERT C | PORT EVERGLADES TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Retired Employee | Y | 2001/03/21 | |
| 102 | 102 | STOWE, BRIAN G. | PORT EVERGLADES TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2002/06/28 | |
| 103 | 103 | TURPIN, ROBERT W | PORT EVERGLADES TOWING | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/04 | 6 |
| 104 | 104 | WILKINS, TRAVIS | PORT EVERGLADES TOWING | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | |
| | | | 22 | | | | | | | |
| 105 | 105 | ANDERSEN, KRISTEN | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2002/11/03 | 6 |
| 106 | 106 | BAROUETTE, JEAN | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2000/06/07 | 6 |
| 107 | 107 | BARRERE, ALEJANDRO | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Temporary | Active Assignment | Employee | Y | 2003/05/12 | 6 |
| 108 | 108 | DELANO, MICHELLE | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | 4 |
| 109 | 109 | DENNING, ARTHUR T | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2002/06/28 | 6 |
| 110 | 110 | DeSOSTOA, VINCENT J | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | 6 |
| 111 | 111 | FINCH, JR., STEPHEN B | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/07/12 | 1 |
| 112 | 112 | GRAY, MARY ANN | SEABULK ADMINISTRATION | Administrative N/A | Consultant | Consultant | Consultant | | 7/19/2001 | |
| 113 | 113 | GRIMM, MARY A | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2003/01/16 | 6 |
| 114 | 114 | GURIAN, DANIEL M | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2003/01/06 | 5 |
| 115 | 115 | HARRY, LISA A | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | 6 |
| 116 | 116 | JOHNSTON, PATRICE | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2003/03/01 | 5 |
| 117 | 117 | JURAN, SHIRLEY L | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/01 | 6 |
| 118 | 118 | KEIZS, BEVERLY L | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | 1 |
| 119 | 119 | KURZ, GERHARD | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2000/06/06 | 6 |
| 120 | 120 | MIRANDA, CELIA M | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | 3 |
| 121 | 121 | O'CONNELL, JOHN JACK | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | 6 |
| 122 | 122 | OSGOOD, JEANETTE K | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | 6 |
| 123 | 123 | PELLICCI, MICHAEL J | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | 4 |
| 124 | 124 | REVURU, PARVATHY | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/04 | 6 |
| 125 | 125 | ROBERTS, JEAN YVONNE | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/04 | 6 |
| 126 | 126 | RODGERS, RICHARD G | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2002/07/16 | 6 |
| 127 | 127 | SAENZ, RONALD W | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | 6 |
| 128 | 128 | SCRICCA, RICHARD A | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | 5 |
| 129 | 129 | SMITH, RONALD | SEABULK ADMINISTRATION | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | 5 |

G:\HR\NOR\ACBC\Ethics Report 7-10-03 Final A.xls

| ROW # | CALC | FULL NAME | ORGANIZATION | PEOPLE GROUP | EMPLOYMENT CATEGORY | ASSIGNMENT STATUS | PERSON TYPE | ET | ET DATE | GRADE |
|---|---|---|---|---|---|---|---|---|---|---|
| 130 | 130 | SMITH, SUSAN K | SEABULK ADMINISTRATION | Administrative-N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04-04 | 6 |
| 131 | 131 | THERIEN, ELIZABETH A. | SEABULK ADMINISTRATION | Administrative-N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2002/03/07 | 6 |
| 132 | 132 | TWAITS, ALAN R | SEABULK ADMINISTRATION | Administrative-N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2002/05/06 | 5 |
| 133 | 133 | URQUIDO, JULIO | SEABULK ADMINISTRATION | Administrative-N/A | Fulltime-Temporary | Active Assignment | Employee | Y | 2003/07/07 | 5 |
| 134 | 134 | VAIL, GARY C | SEABULK ADMINISTRATION | Administrative-N/A | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/03/21 | 6 |
| 135 | 135 | VAN LEW, SHIRLEY | SEABULK ADMINISTRATION | Administrative-N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/21 | 6 |
| 136 | 136 | VERVURRT, LARRY H | SEABULK ADMINISTRATION | Administrative-N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/04 | 6 |
|  |  |  | 32 |  |  |  |  |  |  |  |
| 137 | 137 | ALBERTONI, ANGELO A | SEABULK ARCTIC | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/10/19 |  |
| 138 | 138 | BARRY, MICHAEL W | SEABULK ARCTIC | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/10/19 |  |
| 139 | 139 | BREMNER, ROBERT W | SEABULK ARCTIC | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/07/24 |  |
| 140 | 140 | BROWN, ANDREW G | SEABULK ARCTIC | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/07/10 |  |
| 141 | 141 | CLEMENT, JAMES P | SEABULK ARCTIC | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/10/19 |  |
| 142 | 142 | CULAS, BELLARMINE | SEABULK ARCTIC | Licensed TANKER | Fulltime-Temporary | Active Assignment | Rehired Employee | Y | 2002/10/19 |  |
| 143 | 143 | HATTON, EVERETT M | SEABULK ARCTIC | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/10/19 |  |
| 144 | 144 | HOPKINS, JEREMY L. | SEABULK ARCTIC | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/07/24 |  |
| 145 | 145 | KAST, JASON L | SEABULK ARCTIC | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/11/04 |  |
| 146 | 146 | MATTHEW, HENRY A. | SEABULK ARCTIC | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/10/18 |  |
| 147 | 147 | NICHOLSON, PETER C | SEABULK ARCTIC | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/10/19 | 1 |
| 148 | 148 | ROPER, BRENDAN | SEABULK ARCTIC | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/02/27 |  |
| 149 | 149 | ROSATI, RICHARD C | SEABULK ARCTIC | Licensed TANKER | Fulltime-Temporary | Active Assignment | Rehired Employee | Y | 2003/02/12 |  |
| 150 | 150 | SHELTON GREGORY S | SEABULK ARCTIC | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2003/05/11 |  |
| 151 | 151 | YOST, KURT | SEABULK ARCTIC | Administrative-N/A | Fulltime-Temporary | Active Assignment | Employee | Y | 2003/05/13 |  |
|  |  |  | 15 |  |  |  |  |  |  |  |
| 152 | 152 | DAVIS, KELLY | SEABULK CHALLENGE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2003/05/13 |  |
| 153 | 153 | FARNAN, SEAN R | SEABULK CHALLENGE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/08/29 |  |
| 154 | 154 | GORGONE, DANIEL | SEABULK CHALLENGE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/06/15 |  |
| 155 | 155 | JOHNSON, DAVID A | SEABULK CHALLENGE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2003/06/06 |  |
| 156 | 156 | KETTERINGHAM, ERIC | SEABULK CHALLENGE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/02/27 |  |
| 157 | 157 | LEMKE, GREGORY F | SEABULK CHALLENGE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/09/06 |  |
| 158 | 158 | MAXIM, MARK W | SEABULK CHALLENGE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Rehired Employee | Y | 2002/09/06 | 1 |
| 159 | 159 | MC CARTHY, THOMAS W | SEABULK CHALLENGE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/09/06 | 1 |
| 160 | 160 | MILLER, ERIC J | SEABULK CHALLENGE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/09/17 |  |
| 161 | 161 | OSBORNE, THOMAS S | SEABULK CHALLENGE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/10/17 |  |
| 162 | 162 | PARKER, MICHAEL R | SEABULK CHALLENGE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/02/27 |  |
|  |  |  | 11 |  |  |  |  |  |  |  |
| 163 | 163 | ANDERSEN, SCOTT | SEABULK MARINER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/09/20 |  |
| 164 | 164 | FURBY, JAMES | SEABULK MARINER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2003/01/15 |  |
| 165 | 165 | LESIEUR, CEVAN | SEABULK MARINER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/09/20 |  |
| 166 | 166 | MANNING, WILLIAM | SEABULK MARINER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2003/01/15 |  |
| 167 | 167 | MARSHALL, JAMES O | SEABULK MARINER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/09/18 |  |
| 168 | 168 | MORIN, CHAD | SEABULK MARINER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2003/02/16 |  |
| 168 | 169 | RICHTER, MATTHEW | SEABULK MARINER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/09/20 |  |
| 170 | 170 | WHITTEMORE, JEREMY MICHAEL | SEABULK MARINER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Rehired Employee | Y | 2001/05/12 |  |
| 171 | 171 | WILSON, STEVEN | SEABULK MARINER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/09/20 |  |
|  |  |  | 9 |  |  |  |  |  |  |  |

| ROW # | CALC | FULL NAME | ORGANIZATION | PEOPLE GROUP | EMPLOYMENT CATEGORY | ASSIGNMENT STATUS | PERSON TYPE | ET | ET DATE | GRADE |
|---|---|---|---|---|---|---|---|---|---|---|
| 172 | 172 | CANTRELL, JR., PAUL E | SEABULK PRIDE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | ✓ | 2001/10/13 | |
| 173 | 173 | CLIFFORD, STEPHEN F | SEABULK PRIDE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | ✓ | 2001/07/10 | |
| 174 | 174 | CORBETT, ROBERT K | SEABULK PRIDE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | ✓ | 2001/10/13 | |
| 175 | 175 | LEEMAN, SCOTT K | SEABULK PRIDE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | ✓ | 2002/09/06 | |
| 176 | 176 | MENSCHING, ROBERT GREGORY | SEABULK PRIDE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Retired Employee | ✓ | 2001/09/06 | |
| 177 | 177 | PATTERSON, PAUL E | SEABULK PRIDE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Retired Employee | ✓ | 2001/10/13 | |
| 178 | 178 | SPRAGUE, DONALD | SEABULK PRIDE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Retired Employee | ✓ | 2002/09/05 | |
| 179 | 179 | TURNER, ERIC P | SEABULK PRIDE | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | ✓ | 2002/02/27 | |
| 180 | 180 | ANDERSON, GRAHAM | SEABULK TANKERS, INC | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | ✓ | 2002/01/17 | 6 |
| 181 | 181 | CARON, RICHARD M | SEABULK TANKERS, INC | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/06/06 | 6 |
| 182 | 182 | DENJETOLIS, FRANK | SEABULK TANKERS, INC | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | ✓ | 2003/01/15 | 6 |
| 183 | 183 | HEMPE, JAMES W | SEABULK TANKERS, INC | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | ✓ | 2002/08/26 | 6 |
| 184 | 184 | IHOGLA, STEPHEN | SEABULK TANKERS, INC | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | ✓ | 2002/08/21 | 6 |
| 185 | 185 | MOTT, HARVEY J | SEABULK TANKERS, INC | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | ✓ | 2002/01/27 | 6 |
| 186 | 186 | NOWICKI, GREGORY JOHN | SEABULK TANKERS, INC | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/10/03 | 6 |
| 187 | 187 | SCOTT, CASEY E | SEABULK TANKERS, INC | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/06/06 | 6 |
| 188 | 188 | SMYTH, GEORGE W. | SEABULK TANKERS, INC | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/06/06 | 5 |
| 189 | 189 | TELFORD, BRIAN J | SEABULK TANKERS, INC | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | ✓ | 2003/03/07 | 6 |
| 190 | 190 | UNGER, PATRICK STEPHEN | SEABULK TANKERS, INC | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/06/06 | 6 |
| 191 | 191 | WILLRICH, LESLIE STEPHEN (Steve) | SEABULK TANKERS, INC | Administrative N/A | Fulltime-Temporary | Active Assignment | Employee | ✓ | 2001/06/06 | 3 |
| 192 | 192 | BORDEN, RICHARD K | SEABULK TOWING - MANATEE | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/03/07 | |
| 193 | 193 | DALE, CARROLL | SEABULK TOWING - MANATEE | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/03/07 | |
| 194 | 194 | JONES, RONNIE L | SEABULK TOWING - MANATEE | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/02/28 | |
| 195 | 195 | ROSARIO, JUAN A. | SEABULK TOWING - MANATEE | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/03/07 | |
| 196 | 196 | CONNOR, ROYCE | SEABULK TOWING - OFFSHORE | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2002/04/03 | |
| 197 | 197 | CURCI, WILLIAM C. | SEABULK TOWING - OFFSHORE | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2002/03/06 | |
| 198 | 198 | EZEQUIEL, CHARLES H | SEABULK TOWING - OFFSHORE | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/07/16 | |
| 199 | 199 | FLOYD, ANTHONY CARL | SEABULK TOWING - OFFSHORE | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2003/04/22 | |
| 200 | 200 | HILL, CLIFTON G | SEABULK TOWING - OFFSHORE | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/07/16 | |
| 201 | 201 | MADDEN, MARVIN JR. J. | SEABULK TOWING - OFFSHORE | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/07/16 | |
| 202 | 202 | MOSES, GERALD | SEABULK TOWING - OFFSHORE | Licensed TUG | Fulltime-Regular | Active Assignment | Retired Employee | ✓ | 2002/05/23 | |
| 203 | 203 | RILEY, MICHAEL E | SEABULK TOWING - OFFSHORE | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2002/05/22 | |
| 204 | 204 | THOMPSON, ADRIAN | SEABULK TOWING - OFFSHORE | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2002/06/09 | |
| 205 | 205 | WHITE, PATRICK R | SEABULK TOWING - OFFSHORE | Licensed TUG | Partime-Temporary | Active Assignment | Employee | ✓ | 2002/06/09 | |
| 206 | 206 | ADAMS, STANLEY BARRETT | SEABULK TOWING - TAMPA BAY | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2002/11/27 | |
| 207 | 207 | ALLGOOD, WILLIAM C | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/02/28 | |
| 208 | 208 | BARCO, PRESTON K | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/02/28 | |
| 209 | 209 | BOGARD, DOUGLAS E | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/02/28 | |
| 210 | 210 | BORDEN, GERALD P | SEABULK TOWING - TAMPA BAY | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/03/07 | 6 |
| 211 | 211 | CARLSON, DOUGLAS R | SEABULK TOWING - TAMPA BAY | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | ✓ | 2001/01/15 | |
| 212 | 212 | CHADBURN, CHRISTOPHER ALAN | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2002/06/07 | |
| 213 | 213 | COLLINS, CARLOS A.L. | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | ✓ | 2002/06/07 | |

| ROW # | CALC | FULL NAME | ORGANIZATION | PEOPLE GROUP | EMPLOYMENT CATEGORY | ASSIGNMENT STATUS | PERSON TYPE | ET | ET DATE | GRADE |
|---|---|---|---|---|---|---|---|---|---|---|
| 214 | 214 | CROUCH, GUTHRIE T | SEABULK TOWING - TAMPA BAY | Unlicensed TUG | Fulltime-Temporary | Active Assignment | Employee | Y | 2003/04/11 | |
| 215 | 215 | DAVIS, VICTOR C | SEABULK TOWING - TAMPA BAY | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/07 | 5 |
| 216 | 216 | DECKER, RICHARD N | SEABULK TOWING - TAMPA BAY | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | |
| 217 | 217 | DEFONTAINE, KRISTIE A | SEABULK TOWING - TAMPA BAY | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/07 | 6 |
| 218 | 218 | FEATHERSTON, MARK A | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/27 | |
| 219 | 219 | FEHRENBACH, JAMES T | SEABULK TOWING - TAMPA BAY | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/07 | |
| 220 | 220 | GONZALEZ, HECTOR R | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/07 | |
| 221 | 221 | HUDDLESTON, ROBERT L | SEABULK TOWING - TAMPA BAY | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/04/22 | |
| 222 | 222 | JUNCAL, CARLO M JR | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/07 | |
| 223 | 223 | MC DONALD, ANDREW D | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | |
| 224 | 224 | MITCHELL, GENE A | SEABULK TOWING - TAMPA BAY | Administrative N/A | Fulltime-Temporary | Active Assignment | Employee | Y | 2003/04/29 | |
| 225 | 225 | MOORHEAD, ROBERT S | SEABULK TOWING - TAMPA BAY | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | |
| 226 | 226 | MUSE, TRAVIS | SEABULK TOWING - TAMPA BAY | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | |
| 227 | 227 | NOBLE, RICHARD | SEABULK TOWING - TAMPA BAY | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/12/21 | 3 |
| 228 | 228 | NUES-DIAS, JOSE | SEABULK TOWING - TAMPA BAY | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/07 | |
| 229 | 229 | OUZTS, GARY E SR | SEABULK TOWING - TAMPA BAY | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | |
| 230 | 230 | PAVON, ARMELIO P | SEABULK TOWING - TAMPA BAY | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | |
| 231 | 231 | PENROSE, PHILLIP JASON | SEABULK TOWING - TAMPA BAY | Unlicensed TUG | Fulltime-Temporary | Active Assignment | Rehired Employee | Y | 2003/04/29 | |
| 232 | 232 | PERKINS, HAROLD W | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/07 | |
| 233 | 233 | RAMIREZ, VICTOR M | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | |
| 234 | 234 | RAULERSON, JOHN R | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | |
| 235 | 235 | ROGERS, KENNETH | SEABULK TOWING - TAMPA BAY | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2002/02/28 | |
| 236 | 236 | ROLLINS, EDWARD C. JR | SEABULK TOWING - TAMPA BAY | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | |
| 237 | 237 | SCOTT, HEATH G. | SEABULK TOWING - TAMPA BAY | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/03/07 | |
| 238 | 238 | SHELTON, JOHN S | SEABULK TOWING - TAMPA BAY | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | |
| 239 | 239 | SHELTON, LAWRENCE W | SEABULK TOWING - TAMPA BAY | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | |
| 240 | 240 | STORCH, DAVID K. | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Rehired Employee | Y | 2001/03/07 | |
| 241 | 241 | STRICKLAND, ROBERT E | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | |
| 242 | 242 | TERRY, ROLAND | SEABULK TOWING - TAMPA BAY | Unlicensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2002/05/15 | |
| 243 | 243 | TUCKER, DONALD D | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2002/02/28 | |
| 244 | 244 | TYOE, KEITH R. | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | |
| 245 | 245 | VALANDINGHAM, PHILIP W | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | 6 |
| 246 | 246 | VAN SICKLE, RONALD E | SEABULK TOWING - TAMPA BAY | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | |
| 247 | 247 | WATTS, CLYBURN G | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | |
| 248 | 248 | WHITE, WILLIAM P | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Rehired Employee | Y | 2002/03/05 | 6 |
| 249 | 249 | WILKINS, THOMAS B | SEABULK TOWING - TAMPA BAY | Licensed TUG | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | |
| 250 | 250 | WORKMAN, FRANKLIN ART (ART) | SEABULK TOWING - TAMPA BAY | Administrative N/A | Fulltime-Regular | Active Assignment | Employee | Y | 2001/02/28 | 6 |
| 251 | 251 | BOWERS, JERRY E. | SEABULK TRADER | 45 | | Fulltime-Temporary | Active Assignment | Rehired Employee | Y | 2003/01/14 | |
| 252 | 252 | CHALKE, WILLIAM | SEABULK TRADER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 7/4/2003 | |
| 253 | 253 | DELAGE, MICHAEL B. | SEABULK TRADER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/07/07 | |
| 254 | 254 | EDLUND, ANDREW JOHN | SEABULK TRADER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/02/27 | |
| 255 | 255 | HARPER, WADE L. | SEABULK TRADER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2002/08/29 | |
| 256 | 256 | HIGGINS, ELEISH | SEABULK TRADER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Rehired Employee | Y | 2001/07/07 | |
| 257 | 257 | HUTCHINS, GEORGE S. III | SEABULK TRADER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/07/07 | |
| 258 | 258 | KELLEY, REX D. | SEABULK TRADER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/07/07 | |
| 259 | 259 | LIEBSCH, THOMAS M. | SEABULK TRADER | Licensed TANKER | Fulltime-Temporary | Active Assignment | Employee | Y | 2001/07/07 | |

cc: SKS
(close)

# VIDEOTAPE ATTENDANCE LIST
## SEABULK INTERNATIONAL, INC.
## CORPORATE INTEGRITY AND COMPLIANCE TRAINING

**LOCATION (DIVISION or VESSEL NAME):    M/V SEABULK TRADER**

DATE VIEWED: _July 4th, 2003_
_& July 5th_
START TIME: _0800pm_ , END TIME: _0830pm_
_1200  & TO  1230_

| | NAME (PRINT PRINT) | SIGNATURE | SOCIAL SECURITY NUMBER | JOB TITLE | Check if you rec'd a copy of Management & Employee Summary |
|---|---|---|---|---|---|
| 1 | William J Chalke | William J Chalke | 519546711 | 2nd Asst Eng | ✓ |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | | | | | |
| 20 | | | | | |
| 21 | | | | | |
| 22 | | | | | |
| 23 | | | | | |

x:kss/lists/cbc/Videotape Attendance List Rev'd 9-5-02

CC: S/S

# VIDEOTAPE ATTENDANCE LIST
## SEABULK INTERNATIONAL, INC.
## CORPORATE INTEGRITY AND COMPLIANCE TRAINING

LOCATION (DIVISION or VESSEL NAME): __SBI HEADQUARTERS__

DATE VIEWED: 7/10/03 , 200 3

START TIME: 8:30   END TIME: 9:30 pm

ENTERED

| | NAME (PRINT PRINT) | SIGNATURE | SOCIAL SECURITY NUMBER | JOB TITLE | Check if you rec'd a copy of Management & Employee Summary |
|---|---|---|---|---|---|
| 1 | JULIO URQUIJO | Julio Urquijo | 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 | DIRECTOR AUDIT & MANAGEMENT ADVIS. SVCS | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | | | | | |
| 20 | | | | | |
| 21 | | | | | |
| 22 | | | | | |
| 23 | | | | | |

x:kss/lists/cbc/Videotape Attendance List Rev'd 9-5-02

*CC: N. Jones*

# VIDEOTAPE ATTENDANCE LIST
## SEABULK INTERNATIONAL, INC.
## CORPORATE INTEGRITY AND COMPLIANCE TRAINING

**LOCATION (DIVISION or VESSEL NAME):** *Tug New River*

**DATE VIEWED:** *Jun 11*_____, 200*3*

**START TIME:** _____    **END TIME:** _____

| | NAME (PRINT PRINT) | SIGNATURE | SOCIAL SECURITY NUMBER | JOB TITLE | Check if you rec'd a copy of Management & Employee Summary |
|---|---|---|---|---|---|
| 1 | Dave McGowan | David McGowan | 15 4 66 - 6287 | AB-Deck | ✓ |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | | | | | |
| 20 | | | | | |
| 21 | | | | | |
| 22 | | | | | |
| 23 | | | | | |

x:kss/lists/cbc/Videotape Attendance List Rev'd 9-5-02

FROM : HMI PETROCHEM          PHONE NO. : 713 898 270          JUN. 06 2003 10:48AM P1

CC: N. Jones

# VIDEOTAPE ATTENDANCE LIST
## SEABULK INTERNATIONAL, INC.
### CORPORATE INTEGRITY AND COMPLIANCE TRAINING

LOCATION (DIVISION or VESSEL NAME): __**SEABULK CHALLENGE**__

DATE VIEWED: _June 6_____, 200_3_

START TIME: _1300_____     END TIME: _1400_____

| | NAME (PRINT PRINT) | SIGNATURE | SOCIAL SECURITY NUMBER | JOB TITLE | Check if you rec'd a copy of Management & Employee Summary |
|---|---|---|---|---|---|
| 1 | ERIC I KETTERINGHAM | *(signature)* | 556 91 2623 | 3/E | ✓ |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | | | | | |
| 20 | | | | | |
| 21 | | | | | |
| 22 | | | | | |
| 23 | | | | | |

s.kss/lists/cbc/Videotape Attendance List Rev'd 9-5-02

*CC  N. Jones*

# VIDEOTAPE ATTENDANCE LIST
## SEABULK INTERNATIONAL, INC.
## CORPORATE INTEGRITY AND COMPLIANCE TRAINING

LOCATION (DIVISION or VESSEL NAME): __SEABULK CHALLENGE__

DATE VIEWED: _MAY 13_____, 200_3_

START TIME: _1600_____    END TIME: _1700_____

| | NAME (PRINT PRINT) | SIGNATURE | SOCIAL SECURITY NUMBER | JOB TITLE | Check if you rec'd a copy of Management & Employee Summary |
|---|---|---|---|---|---|
| 1 | SEAN R FARAN | S. F. | 590 66 6752 | 2/E | ✓ |
| 2 | KELLY C DAVIS | Kelly Davis | 547 842 506 | 3/E | ✓ |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | | | | | |
| 20 | | | | | |
| 21 | | | | | |
| 22 | | | | | |
| 23 | | | | | |

v:kss/lists/cbc/Videotape Attendance List Rev'd 9-5-02

To: Legal (Susan Smith)

c: N. Jones

# VIDEOTAPE ATTENDANCE LIST
## SEABULK INTERNATIONAL, INC.
## CORPORATE INTEGRITY AND COMPLIANCE TRAINING

**LOCATION (DIVISION or VESSEL NAME):** SBA

**DATE VIEWED:** 5/12 , 2003

**START TIME:** 9:45am  **END TIME:** 10:45am

| | NAME (PRINT PRINT) | SIGNATURE | SOCIAL SECURITY NUMBER | JOB TITLE | Check if you rec'd a copy of Management & Employee Summary |
|---|---|---|---|---|---|
| 1 | Michelle DeLano | Michelle DeLano | 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 | Accounting Manager | ✓ |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | | | | | |
| 20 | | | | | |
| 21 | | | | | |
| 22 | | | | | |
| 23 | | | | | |

x:kss/lists/cbc/Videotape Attendance List Rev'd 9-5-02

FROM : HMI DIAMOND SHOALS        FAX NO. : 8883933868        May. 12 2003 12:44PM P1/1

CC: A. Jones

ON BOARD                    SEABULK MARINER                    5/12/03

Ethics Training Recept

| | NAME | POSITION | | SIGNATURE |
|---|---|---|---|---|
| 1. | Ervin Curtis | Master | | |
| 2. | Alan Tupper | Chief Mate | | |
| 3. | Hazen Dennison | 2nd Mate | | |
| 4. | Jeremy Whittemore | 3rd Mate | | Jeremy Whittemore |
| 5. | William Conger | 3rd Mate | | |
| 6. | Fred Skidgell | Chief Engineer | | |
| 7. | James Eaton | 1st Engineer | | |
| 8. | Michael Hogan | 2nd Engineer | | |
| 9. | Roger Munoz | 3rd Engineer | | |
| 10. | Larry Zepeda | BOSUN | | |
| 11. | Patricio Libre | AB Maint | | |
| 12. | Albert Mensah | AB Maint | | |
| 13. | Michael Riley | AB | | |
| 14. | Albert Washington | AB | | |
| 15. | Timothy Jackson | AB | | |
| 16. | Wilfredo Martinez | QMED/Pumpman | | |
| 17. | Kareem Joseph | Wiper | | |
| 18. | Christian Hernandez | Wiper | | |
| 19. | Geoge Monseur | Steward/Baker | | |
| 20. | Mariano Martinez | Chief Cook | | |
| 21. | | GVA | | |
| 22. | Patrick M. Potter | Deck Cadet | | |

RE: *Notice*

# VIDEOTAPE ATTENDANCE LIST
## SEABULK INTERNATIONAL, INC.
## CORPORATE INTEGRITY AND COMPLIANCE TRAINING

**LOCATION (DIVISION or VESSEL NAME): Seabulk Arctic**

**DATE VIEWED: May 11th , 2003**

**START TIME: 1230        END TIME: 1345**

| | NAME *(PRINT PRINT)* | SIGNATURE | SOCIAL SECURITY NUMBER | JOB TITLE | Check if you rec'd a copy of Management & Employee Summary |
|---|---|---|---|---|---|
| 1 | Kurt V. Yost | | 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 | Master | X |
| 2 | Michael D. Wiley | | 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 | AB (M) | X |
| 3 | Kevin A. Moyer | | 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 | Deck Cadet | X |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | | | | | |
| 20 | | | | | |
| 21 | | | | | |
| 22 | | | | | |
| 23 | | | | | |

x:/kss/lists/cbc/Videotape Attendance List Rev'd 9-5-02

*cc: N. Jones*

## VIDEOTAPE ATTENDANCE LIST

## SEABULK INTERNATIONAL, INC.

## CORPORATE INTEGRITY AND COMPLIANCE TRAINING

DATE VIEWED: _29 APR_____, 2003

LOCATION: _TAMPA -SBT._____

START TIME: _8:38_____    END TIME: _9:41_____

| NAME | Social Sec. No. | JOB TITLE | Check here if you have received a copy of Management and Employee Summary |
|------|-----------------|-----------|---------------------------------------------------------------------------|

PLEASE PRINT:

| # | NAME | Social Sec. No. | JOB TITLE | Check |
|---|------|-----------------|-----------|-------|
| 1. | Phillip Penrose | 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 | Deck Hand | ✓ |
| 2. | GENE MITCHEL | 450702081 | ABLE SEAMAN | ✓ |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |

*cc: N. Jones*

# VIDEOTAPE ATTENDANCE LIST

## SEABULK INTERNATIONAL, INC.

### CORPORATE INTEGRITY AND COMPLIANCE TRAINING

DATE VIEWED: **4-22-03** , ~~2001~~ *2003*

LOCATION: **Tampa**

START TIME: **0906**          END TIME: **1006**

| NAME | Social Sec. No. | JOB TITLE | Check here if you have received a copy of Management and Employee Summary |
|------|-----------------|-----------|---------------------------------------------------------------------------|

PLEASE PRINT:

| | | | | |
|----|----------------------|-------------|------------|---|
| 1. | Robert Huddleston | 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 | Dispatcher | ✓ |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |

C^: K. SENIOR

# VIDEOTAPE ATTENDANCE LIST
## SEABULK INTERNATIONAL, INC.
## CORPORATE INTEGRITY AND COMPLIANCE TRAINING

**LOCATION (DIVISION or VESSEL NAME):** FT. LAUD

**DATE VIEWED:** 4·15 , 2003

**START TIME:** 1025     **END TIME:** 1125

| | NAME (PRINT PRINT) | SIGNATURE | SOCIAL SECURITY NUMBER | JOB TITLE | Check if you rec'd a copy of Management & Employee Summary |
|---|---|---|---|---|---|
| 1 | Scott Allen | Scott Alb | on File | Captain | ✓ |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | | | | | |
| 20 | | | | | |
| 21 | | | | | |
| 22 | | | | | |
| 23 | | | | | |

x kss/lists/chc/Videotape Attendance List Rev'd 9-5-02

*CC: N. JONES*

# VIDEOTAPE ATTENDANCE LIST

## SEABULK INTERNATIONAL, INC.

### CORPORATE INTEGRITY AND COMPLIANCE TRAINING

DATE VIEWED: _11 APR_____, 2003

LOCATION: _TAMPA OFFICE____

START TIME: _1:50 pm___     END TIME: _2:50 pm___

Check here if you have
received a copy of
Management and
Employee Summary

| | NAME | Social Sec. No. | JOB TITLE | |
|---|---|---|---|---|

PLEASE PRINT:

1. Guthrie Crouch   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   Deckhand   ✓
2. 
3. 
4. 
5. 
6. 
7. 
8. 
9. 
10. 
11. 
12. 
13. 
14.

FROM : HMI DIAMOND SHOALS          FAX NO. : 8883933868          Apr. 24 2003 09:38AM P1/1

CC: N. Jones

**ON BOARD**                    **SEABULK MARINER**                    4/22/03

Ethics Training Video Receipt

| | NAME | POSITION | | SIGNATURE |
|---|---|---|---|---|
| 1. | Ervin Curtis | Master | | |
| 2. | Alan Tupper | Chief Mate | | |
| 3. | Hazen Dennison | 2nd Mate | | |
| 4. | Jeremy Whittemore | 3rd Mate | | |
| 5. | William Conger | 3rd Mate | | *William Clark Conger* |
| 6. | Fred Skidgell | Chief Engineer | | |
| 7. | James Eaton | 1st Engineer | | |
| 8. | Michael Hogan | 2nd Engineer | | |
| 9. | Roger Munoz | 3rd Engineer | | |
| 10. | Ramon Castro | BOSUN | | |
| 11. | Patricio Libre | AB Maint | | *[signature]* |
| 12. | Albert Mensah | AB Maint | | |
| 13. | Michael Riley | AB | | |
| 14. | Albert Washigton | AB | | |
| 15. | Timothy Jackson | AB | | |
| 16. | Wilfredo Martinez | QMED/Pumpman | | |
| 17. | Kareem Joseph | Wiper | | |
| 18. | Christian Hernandez | Wiper | | |
| 19. | Geoge Monseur | Steward/Baker | | |
| 20. | Mariano Martinez | Chief Cook | | |
| 21. | Mario N. Rochez | GVA | | |
| 22. | Patrick M. Potter | Deck Cadet | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

# VIDEOTAPE ATTENDANCE LIST
## SEABULK INTERNATIONAL, INC.
## CORPORATE INTEGRITY AND COMPLIANCE TRAINING

*CC : SIG*

LOCATION (DIVISION or VESSEL NAME): *SEABULK CHALLENGE*

DATE VIEWED: *4/9/* , 200 *3*

START TIME: *1647*    END TIME: *1746*

| | NAME (PRINT PRINT) | SIGNATURE | SOCIAL SECURITY NUMBER | JOB TITLE | Check if you rec'd a copy of Management & Employee Summary |
|---|---|---|---|---|---|
| 1 | JOHN SUNARA | *[signature]* | 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 | 3RD A/E | ✓ |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | | | | | |
| 20 | | | | | |
| 21 | | | | | |
| 22 | | | | | |
| 23 | | | | | |

s:kss/lists/cbc/Videotape Attendance List Rev'd 9-5-02

# ADDITIONAL ATTACHMENTS
# <u>NOT SCANNED</u>

❑  LEGAL SIZE DOCUMENTS

■  LARGE EXHIBIT

❑  DOUBLE SIDED

❑  EXTRADITION PAPERS

❑  BOUNDED AND/OR TABBED
PURSUANT TO LOCAL RULE
5.1.A.2.(b)

❑  BANKRUPTCY PAPERS

❑  FLOPPY DISK/VIDEO TAPE(S)

☑  OTHER  *book*  _____

_____

## PLEASE REFER TO THE COURT FILE